# Jessup *versus* Loucks.

1. A navigation company under its charter erected a dam ; it subsequently abandoned its works and the dam was rebuilt by the defendants.   In an action for backing water, the plaintiff declared that until the obstruction by rebuilding the dam, the creek had been accustomed to flow through his premises.   The court below treated this as a material averment, excluding the presumption of any nuisance by a prior dam of the company.  *Held,* to be error.

2. The averment of the plaintiff's right and enjoyment of the natural flow of the stream until disturbed by the defendants in the manner set forth, admitted nothing and but asserted, in the usual mode, a right incident to the ownership of real estate on the stream, to its natural flow through it.

3. The plea of not guilty did not put this averment in issue in the first instance and the plaintiff was not bound to prove it until an issue was made on it.

4. If the defendants claimed by grant or prescription it would be absolutely necessary that the right should be in themselves and not in a stranger.

5. The company had a right, under their charter, to build and maintain dams for the purpose of their navigation and to sell surplus water.   They granted to a predecessor of defendants, his heirs and assigns for ever, the full use of the water not wanted for the navigation, with privilege to keep the dam (in question) in good order.   The works fell into entire disuse, the defendants rebuilt the dam and claimed to maintain it under the grant. *Held,* that the company had no power to grant the rights claimed.

6. The defendants had no prescriptive right to maintain the company's dam.   They having built under the authority of the Commonwealth and while so maintaining it stood upon principles the opposite of those giving a right by prescription.

7. Right by prescription exists in an uninterrupted user for 21 years, acquiesced in by the party who has the right, and hence a grant will be presumed.

[Jessup v. Loucks.]

8. Acquiescence is not to be presumed against a party who has no choice but to acquiesce, as in the case of private property taken for public use by authority of the state.

9. When private property is taken for public use by a corporation invested with the right of eminent domain, if that use ceases, it reverts to the owner of the soil from whom it was taken.

10. The grant by the navigation company being of an incident to the principal object in granting the charter must necessarily expire with the principal and cease when that ceases.

11. There could be no fee simple estate in the grant. It might be perpetual if the works continued to be so, but its perpetuity depended upon that.

12. The modern rule is against technical objections to testimony.

13. If a plaintiff's case require testimony as to any particular matter and evidence be given, it cannot be accumulated under pretence of rebutting what the defendant has given in answer.

14. The plaintiffs offered evidence of the bench marks on the ground made by deceased engineer of the company and his field notes. *Held*, that as the defendants claimed under the company they were evidence as acts of its agents in constructing the dam.

15. All the work on the ground going to establish the height of the dam would be evidence.

May 20th 1867.　Before Woodward, C. J., Thompson and Agnew, JJ.　Strong and Read, JJ., absent.

Error to the Court of Common Pleas of *York county*.

This was an action on the case for nuisance brought, July 30th 1862, by Alfred D. Jessup against Zechariah K. Loucks and Henry J. Loucks, and was tried before Hon. Alexander Hays, A. J., of the Second Judicial District.

The plaintiff's declaration averred seisin of a tract of land with " water-power and paper-mill thereon, with the appurtenances. And the plaintiff, and all those whose estate he has in said tract of land, water-power and mill, from time whereof the memory of man runneth not to the contrary have had, until obstructed by the said defendants, the free course and use of a stream of water, called the Codorus creek, running along and over the portion of said tract of land adjacent thereto ; and the plaintiff still ought to have and hold the same free and undisturbed," &c., and that the defendants erected a dam across said stream below the plaintiff's land, raised the stream " above its usual and due height, and caused a backwater hindering the free course of said stream from the said mill, water-power and tract of land to the great nuisance thereof," &c.

Other counts of the declaration charged the defendants with *maintaining* a nuisance in the stream.　The defendants pleaded " not guilty."

The facts in the case, as they appeared on the trial, were as follows :—

By an Act of Assembly, passed April 12th 1825, the Codorus Navigation Company was incorporated and authorized to enter

[Jessup *v.* Loucks.]

upon lands and make dams and other devices for a canal; dam-, ages to be assessed and paid to the owners of the land as is provided in the act. It was further provided that as soon as they should "have completed the said navigation, they shall have the privilege and be entitled to sell, in fee simple, loan or rent, for one or more years the water from the said river, sluices, canals or other devices, to any person or persons, to be used in such manner and on such terms as they may think proper: *Provided*, It be so done, that it shall not, at any time, impede or interrupt the navigation."          *          *          *          *          *

"That in case of forfeiture or resumption, by the legislature, of the rights, &c., hereby granted, nothing herein contained shall be construed to work a forfeiture of the rights of individuals to water-power under grants made by the president, managers and company; but the same shall be held by individuals, in as full and ample a manner as they might do if no such forfeiture or resumption had taken place; and in lieu of such resumption the principal sum paid or secured to be paid, when the conveyance has been in fee simple, and the accruing rents and profits, when the said water-power has been let for one or more years, shall be forfeited to the commonwealth."

The works of the company were completed about the year 1833. Part of their works was a dam known as "Dam No. 1."

The mills and water-power now owned by the plaintiff were above this dam; the defendants were below it; the dam was not on the land of either of the parties.

On the 3d of January 1845 George Loucks, the ancestor and predecessor in title of the defendants, made an agreement with the Codorus Navigation Company, by which they granted to him "and to his heirs and assigns for ever the free, full and uninterrupted use of all the water that shall not be wanted to carry on the purposes of said navigation as the same passes or may be made to pass through the canal of said company near the said George Louck's mill, at section number one, reserving to the said company the right of stopping the water on said Loucks, his heirs and assigns, &c., * * * whenever in the opinion of a majority of the managers of said company they find that the business of navigating is impeded by his use of the same and the said Loucks, his heirs and assigns shall have the privilege of keeping the canal and first dam and any other of the company's works in good order as far as may be requisite for his enjoyment of the same if the said company, on forty-eight hours' notice, do not attend to the repair of the same, and the said Loucks, his heirs and assigns, for such repairs as aforesaid shall be paid by the said company."

* * * "And if at any time the said company should cease to exist, or from any other cause be unable to keep in good repair the work, from and including the first dam at the borough

of York to Barnitz's lock, excepting what is to be done as afore-said by said Loucks, then and in that case the said company grant the said Loucks, his heirs and assigns, all the rights and privileges granted to them by their charter, and authorize him or them to enter into and upon all adjacent lands for the purpose of procuring materials for repairing the dam and canal above men-tioned, reserving to the said company the right to stop the water for the purpose of repairing said works when needed, and using all possible despatch in their work, so that the mill or mills of said Loucks be not unnecessarily stopped. In consideration for all which privileges, the said George Loucks agrees to enter satisfaction upon all judgments which he holds against the said company, and also to release all claims against them."

In 1847 the navigation company ceased to maintain their works and permitted them to fall into entire disuse, and in 1852 the company were authorized, by Act of Assembly, to sell their works, which they were unable to do. The defendants repaired or rebuilt the " Dam No. 1" about 1856, for their own use.

This dam the plaintiff alleged was the cause of the backwater. The evidence on this point was very voluminous on both sides; much of it related to the comparative height of the water above the dam before and after the rebuilding of the dam in 1856.

The evidence was conflicting. In rebuttal the plaintiff proposed, by a number of offers, evidence bearing upon the height of the dam as originally built by the company. Amongst others he offered to prove by a witness that he, with others, shortly after this dam was erected, the defendant being along, and Jonathan Jessup, the superintendent of the navigation company, being one of the party, went to the neighborhood of this dam, cut open a bench mark that they had made on a tree when the work was constructed, and. took the difference of level between the bench mark and mitre-sill of the guard-lock, and found that the level agreed with the notes of Mr. Jessup made at the time the work was constructed, and also with his statement of the fact then made; Mr. Jessup being now dead—he having been the engineer who constructed the work; and to follow this with evidence that the bench-mark was made by a living witness who would be called.

The offers were rejected as not being rebutting, and the latter also as hearsay, and the plaintiff excepted.

The plaintiff submitted the following points:—

1. If the jury believe that Zechariah K. Loucks and Henry J. Loucks, the defendants, erected a dam below the borough of York, on the site of Dam No. 1, of the Codorus Navigation Company, for themselves and not for the use of the said company, and kept and maintained the same, although notified by the said company, that in so doing they had swelled the water higher than any autho-

[*Jessup v. Loucks.*]

rity from the company warranted, it was the duty of the defendants to reduce the height of the dam within the limits prescribed by the company, and if they refuse to do so, and continue to swell the water back upon the plaintiff's premises, the plaintiff is entitled to recover.

2. If the defendants are entitled to the water-power supplied by dam No. 1, of the Codorus Navigation Company, they cannot define and limit by their own acts the rights of the navigation company to the use of the water, either as it respects the company or third persons, and if they have swelled back the water of the creek upon the plaintiff's premises, beyond any claim of right on the part of the company, the plaintiff is entitled to recover.

3. The defendants acquired no right in any event, under the agreement between their father and the navigation company, to enter upon and take possession of dam No. 1 of the company, to rebuild it and maintain the same for their own private use.

4. The company, under the 20th section of their charter, could only grant the use of the water out of their dam or canal for such purposes as it might be used, without interfering with the business of navigation, and without any stipulation on the part of the company as to its use as water-power, and if by the abandonment of transportation by the company, and the destruction and decay of their works, the water returned into its natural course on and over the premises of the defendants, holding under their father, George Loucks, they have all which he purchased and all that they have a right to claim.

\*       \*       \*       \*       \*       \*       \*

8. The plaintiff is entitled to the whole fall upon his premises down to the line of his land, and to recover damages against any person who may back the water upon it, for the mere act of interrupting the flow of the water, unless there be a superior right in such person, and whatever may have been, or may be, the rights of the Codorus Navigation Company, as regards the plaintiff, the agreement of the said company with George Loucks, in evidence in this case, confers no right on the defendants to back the water upon the plaintiff's premises ; and if the jury believe that the dam erected by them did back the water upon the plaintiff, as he complains, he is entitled to recover.

The court answered:—

1. If the water of the creek was swelled back by the erection of the dam by the defendants higher than the original dam No. 1, when that was completed, swelling back upon the plaintiff's paper-mill and land, to the injury of the plaintiff, the plaintiff is entitled to recover ; and this, without respect to the notification of the company.

If, on the other hand, the water was not swelled back by the

[Jessup *v.* Loucks.]

defendants rebuilding the dam, further or higher than the original dam had swelled it, the plaintiff is not entitled to recover, notwithstanding such notification.

2. This is true, so far as the proposition asserts, that if the defendants have swelled back the water of the creek upon the plaintiff's premises beyond any claim of right on the part of the company, the plaintiff is entitled to recover. That is the fact in issue to be decided by you according to the evidence.

3. I am of opinion that the defendants did acquire a right under the agreement between their father and the navigation company to enter upon and take possession of dam No. 1, to rebuild and repair it, and maintain the same for the use of their mill—though I think this not material in this action, for if they did not swell the water back more than the company had done upon the plaintiff, they are not responsible in this action—if they did, they are liable, notwithstanding the agreement.

4. I am of opinion that the Act of Assembly incorporating this company and the supplementary acts, empowered the company to grant to the defendant's father all that the agreement stipulated; but the issue in this action does not involve any question of right between the defendants and the Codorus Navigation Company, and whether the defendants acquired the right to the use of the water or not; if they backed the water of the creek upon the plaintiff by raising it to an unusual and undue height, as he has alleged, they are responsible to him in damages—if they did not so back the water, they are not responsible in this action.

8. The plaintiff claims no such title or privilege in this action, but only the free course and use of the stream, as he and those whose estate he has, had and enjoyed the same before the erection or repair of the dam by the defendants. There is no evidence that his land has been overflowed, except what relates to the tail-race and forebay of his paper-mill, by which he complains that his profits have been diminished.

If the jury believe, judging from all the evidence, that the dam erected by the defendants did back the water upon the plaintiff as he complains, he is entitled to recover.

If the jury do not so believe, they ought to find for the defendants.

The Judge in his general charge said: [" This issue is simple, as all issues of fact ought to be, and the manner, in which the complaint is set forth by the plaintiff, removes much of the difficulty, which the authorities cited and the discussion upon them, would seem to involve.] He charges in every part of his declaration or complaint that the defendants erected this dam, and thereby caused the injury he complains of, and he distinctly avers in every part of the same statement of his complaint that he and all those

whose estate he has in the said tract of land, water-power, and mill, from time whereof the memory of man runneth not to the contrary, have had, *until obstructed by the said defendants, the free course and use of the stream of water,* called the Codorus Creek running along and over the portion of said tract of land adjacent thereto.

[" The complaint excludes the presumption of any nuisance or injury anterior to the defendants rebuilding or repairing of the dam No. 1, by the averment that until thus obstructed by the defendants, the plaintiff and those under whom he holds this property, have always had the free course and use of the Codorus Creek.

" In my opinion, the idea of the swelling back of the water upon the premises to the injury of the plaintiff in consequence of the original construction of the dam No. 1, by the Codorus Navigation Company is out of the case, and out of the question. That work was accomplished in 1832; and the plaintiff declares that then and before, and ever since until interrupted by the defendants' rebuilding of this dam, he and all whose estate he has, have had the free course and use of the stream of water of the Codorus Creek.]

" The question then is this; whether the water of the Codorus Creek has been swelled and backed up, by the reconstruction of the navigation dam by the defendants in 1856, so as to injure the paper mill and premises of the plaintiff, or not.     *     *     *

[" But you are to take the evidence as it has been detailed— and sifting and weighing it carefully ascertain the truth and find a true verdict accordingly, for the plaintiff or the defendants as the whole testimony may prove or may not prove that the water of the Codorus Creek was, by the rebuilding and repair by the defendants of the dam No. 1, raised above its usual and due height, and caused a backwater hindering the free course of the stream from the plaintiff's paper mill, waterpower, and tract of land to the great nuisance thereof, as he has averred."]

The verdict was for the defendants, and the plaintiffs removed the case to the Supreme Court, where they assigned for error the rejection of their evidence, the answers to their points and the parts of the charge in brackets.

*J. Gibson, W. C. Chapman, J. Evans* and *J. L. Mayer,* for plaintiff in error.—The purchase of the surplus water at dam No. 1, of the Slack Water Navigation Company, did not carry the right to the possession, use, and rehabilitation of the work for the private benefit of the purchaser or his heirs, after the public use had wholly ceased, and become impossible. The charter of this company conferred no *absolute estate* in the land occupied. Haldeman *v.* Pennsylvania Railroad Company, 14

[Jessup v. Loucks.]

Wright 436; Corwin v. Cowan, 12 Ohio (N. S.) 629; National, &c., Co. v. Donald, 4 H. & Nor. 8; Varick v. Smith, 5 Paige 137; Harris v. Thompson, 9 Barb. 350; Hooker v. The Turnpike Co., 12 Wend. 473; Dunham v. Williams, 36 Barbour 136; Ridge Turnpike v. Stoever, 6 W. & S. 380; Fisher v. Coyle, 3 Watts 407; Lanc. Turnpike v. Rogers, 2 Barr 115; Branson v. City of Philadelphia, 11 Wright 331; Southwark Co. v. Same Id. 320; Com. ex. rel. Cass, &c., v. Penn. Railroad, 1 P. F. Smith 351; Bissel v. Railroad Companies, 22 N. Y. 258; Commonwealth v. Erie & N. E. Railroad Co., 3 Casey 339. The title to the surplus water is indefeasible, but the *existence* of such surplus is contingent on the *exercise* of the franchise of carrying on the works of the navigation. A *contingent* or *defeasible* interest may be made the subject of grant or descent, but this does not make it *absolute*; Chase v. Sutton Manufacturing Co., 4 Cush. 152; 1 Hillard on Torts 687; Pittsburg v. Scott, 1 Barr 310; Lambertson v. Hogan, 2 Id. 24; Brown v. Commonwealth, 3 S. & R. 276; Commonwealth v. Church, 1 Barr 110; Buckingham v. Smith, 10 Ohio 288; Mifflin v. Railroad Co., 4 Harris 182.

The corporation was created in this as in other cases, to have the exclusive charge of its works in the nature of a *trust*. It alone could possess and control them to the exclusion of every subordinate or dependent interest. Erie Canal Co. v. Walker, 5 Casey 170; Schuylkill Nav. Co. v. M'Donough, 9 Id. 75; Susq. Ca. Co. v. Bonham, 9 W. & S. 28; Spear v. Albion, 8 Harris 200; Fisher v. Coyle, 3 Watts 407; Plymouth Railroad Co. v. Colwell, 3 Wright 339; Commonwealth v. Erie & N. E. Railroad Co., 3 Casey 339; Rockdale Canal v. Radcliffe, 18 Ad. & E. (N. S.) 287, 83 E. C. L. R. 287; Dunham v. Williams, 36 Barb. 162.

The *death* or *inability* of the company contemplated in this agreement, would merely have restored the plaintiff's father to his rights before the works were erected.

A defendant in an action of *tort*, cannot shield himself behind the *greater* wrongs of his predecessors in wrong-doing. The Court reduced the question for the jury to a measuring cast between the amount of injury occasioned by the defendants' dam, and by that of the Navigation Company; and held that it was unnecessary for the defence to show any title under the company, on the idea that the plea of *not guilty* put in issue everything stated in the declaration: Howard v. Peete, 2 Chitty 315, 18 E. C. L. R. 653; Dukes v. Gosling, 1 Bingh. N. C. 588, 27 E. C. L. R. 776; Churchill v. Hunt, 1 Chitty 485, 18 E. C. L. R. 267; 2 Chitty Pleading 621, note m.; 1 Id. 412; 7 Bacon Abr. 566; 1 Chitty Pleading 644; Badner v. Demick, 20 Johns. 406; 2 Saund. R. 207 a; Vowles v. Miller, 3 Taunt. 137; Angell on Watercourses 153; 2 Saund. R. 114, notes; 1 Chitty

Pleading 415; Pastorius *v.* Fisher, 1 Rawle 27; Graver *v.* Sholl, 6 Wright 58; Delaware & Hudson Canal Co. *v.* Torrey, 9 Casey 143; 1 Saund. R. 346 b; 2 Hilliard on Torts 680; 1 Chitty Plead. 412; Cane *v.* Chapman, 5 Adol. & E. 657, 31 E. C. L. R. 772; Sampler *v.* Schissler, 1 W. & S. 370; Morris *v.* McNamee, 5 Harris 180.      -

It must be a very clear case, that would justify judicial discretion in *not* admitting pertinent and weighty evidence merely because out of time, which should never be invoked except to *prevent* injustice : Stetson *v.* Croskey, 2 P. F. Smith 230.

The objections to the entries in the note book of the deceased engineer as not under oath, and not evidence, are not sustained by the authorities: 1 Greenleaf Ev. §§ 115, 116; Nourse *v.* McCay, 2 Rawle 70; 1 Smith's Leading Cases 140.

*V. K. Keesey* and *S. Hepburn*, for defendants in error.—The Commonwealth granted the fee to the Codorus Navigation Company. That Company sold to Loucks; the only question which can be raised under the pleadings, is: whether Loucks have exceeded their right by repairing and rebuilding, in 1856, the dam of the Navigation Company. There is nothing in the declaration charging the original erection by the Navigation Company, prior to 1856, and that the defendants maintained it : McKeen *v.* Delaware Division Canal Co., 13 Wright 425.

The Legislature had power to grant to the Codorus Navigation Company the privileges conferred: Union Canal Co. *v.* Landis, 9 Watts 228; Pittsburg *v.* Scott, 1 Barr 308; McKeen *v.* Delaware Division Canal Co., 13 Wright 424; Union Canal Co. *v.* Young, 1 Whart. 410, 424; Hamilton *v.* Lycoming Insurance Co., 5 Barr 345; Campbell *v.* McCoy, 7 Casey 263; Lacy *v.* Arnett, 9 Casey 169; Bridge Co. *v.* Lehigh Navigation Co., 4 Russell 9; Coil *v.* Pittsburg Female College, 4 Wright 445; Angel & Ames on Corporations 510.

The corporation is legally dead. Its life cannot be questioned in this collateral proceeding. And whether dead or alive, it executed its power while living. Things previously granted over by the corporation do not escheat, or revert: Vin. Abr. *Escheat*, A., pl. 1, 2; Grant on Corporations 314, n. (r). The question of the admission, or rejection of the additional testimony, offered after defendant had closed, was one of discretion in the Court, and is not the subject of review by this Court: Stetson *v.* Croskey, 2 P. F. Smith 230.

The opinion of the court was delivered, July 3d 1867, by

THOMPSON, J.—Having possessed ourselves, after a careful examination, of the facts and law, of the points of controversy in

this case, we will discuss them without deeming it beneficial or necessary to notice every point presented in the numerous assignments of error.

1. In the first place, then, was the learned judge right in holding as he did in his general charge, that the plaintiff's *narr.* in averring, that until the obstruction to the natural flow of water in the Codorus creek by the defendants, occasioned by the repairing or rebuilding the dam therein mentioned, it had been accustomed to flow through and along the premises of the plaintiff, to be regarded as a material averment, excluding the presumption of any nuisance by reason of the prior dam of the company at the same place?

The *narr.* is in the usual form of a *narr.* in such a case, and by way of inducement avers the right and enjoyment by the plaintiff of the natural flow of the stream through his property, until the same was disturbed by the defendants in the manner set forth. This admitted nothing, and but asserted a right in the usual mode incident to the ownership of real estate on the stream, to its natural flow through it. The plea of "not guilty" did not necessarily put this portion of the *narr.* in issue in the first instance at least, any more than it would in slander, the averment that the plaintiff was a good, true and honest citizen. In neither case is the plaintiff bound to prove the averment until an issue is made upon it by the other side. The implication from these words in the *narr.*, drawn by the court, we think was entirely inadmissible. It placed the case before the jury in the attitude of an admission by the plaintiff that no previous obstruction of whatever extent, authorized or unauthorized, to the natural flow of the stream through his premises, was a nuisance or worked harm or injury to him. That being admitted, the defendants would only have to prove that they did no more injury than had been done by somebody else in order to defeat the plaintiff's right of recovery against them. This might introduce innumerable issues; as many at least as there may or might have been trespassers on the riparian rights of the plaintiff. The issue tendered by the plaintiff was single; that the defendant had committed the injury complained of, and their answer was, necessarily, not that somebody before them, with whom they may not have connected themselves, had done the same thing, but that they had not, or if they had, they had a right to do it by grant or prescription. In either case, of grant or prescription, it would be absolutely necessary that the right should be in themselves and not in a stranger.

But it seems to me, according to the scope of the implication allowed from the averment in question, the same effect would follow, if a previous nuisance to the plaintiff had been committed even temporarily by a trespasser. The deduction from the fact

[Jessup *v.* Loucks.]

assumed as admitted, went the length of establishing that notwithstanding the original dam may have flooded the plaintiff's premises, and the authority to maintain it was gone, and the plaintiff's right to the natural flow of water had revived, yet the plaintiff could not recover for a subsequent injury from the same dam rebuilt without regard to authority, because the admission was that no injury had been occasioned by any previous flooding. By such a rule a single act of trespass would be as efficacious to defeat the plaintiff as a prescriptive right or a grant. No such deduction should have been made from what was but matter of form.

As to the materiality of the matter which may be traversed and matters averred by way of aggravation and inducement, see Steph. on Pleading 241-4. We think the error assigned on this portion of the charge is sustained.

2. The defendant's case was in proof rested upon a supposed right in them by grant from the Codorus Navigation Company to their ancestor to keep and maintain dam No. 1, as originally erected by the company.

In 1845 the company granted to George Loucks, the father of the defendants, his heirs and assigns for ever, " the free, full and uninterrupted use of all the water that shall not be wanted to carry on the purposes of said navigation, with the privilege of keeping the canal and dam No. 1, and any other works of the company in good order, as far as may be required for his enjoyment of the same ;" and with the further privilege granted to the company to enter on all adjacent lands to procure materials for making such repairs.

In 1847 the navigation company ceased to maintain their works as a public highway, and permitted them to go out of repair and to fall into entire disuse. In 1852 they obtained authority from the legislature, on a representation " that the works had been partially destroyed and rendered useless and unfit for the purposes of transportation, and that the stockholders were not able to put. them into proper repair, or to pay the debts of the company," to sell them ; but this they were not able to do. And we learn from the testimony that at the time of the trial no portion of the works, excepting two or three of the dams, remained in existence ; all else had disappeared.

Claiming under the grant by the company to George Loucks, above referred to, the defendants, in 1856, repaired, or perhaps more accurately speaking, rebuilt what was dam No. 1 of the company, and have since that time maintained and claim to maintain the same by the authority of that grant.

It is insisted by them, that if the company had the right originally to erect the dam by virtue of their chartered privileges, that they are the legal successors of the corporation, and are pos-

sessed of the same rights which it had in virtue of its charter, notwithstanding it had long ago ceased to act under the charter, or do any of the things required of it to be done in regard to the purposes of the corporation. The learned judge was with the defendants on this position, and so charged, adding, " though I think this is not material in this action; for if they (the defendants) did not swell the water back more than the company had done upon the plaintiffs, they are not responsible in this action; if they did, they are liable, notwithstanding the agreement."

This was a concession to the defendants of rights not incident to the dam repaired and maintained by them, and as we shall see, not within the power of the grantors of their ancestors to confer. No prescriptive right to maintain the dam existed. It was originally placed in the stream by the company, under the authority of the Commonwealth, and while so maintained it stood upon principles the opposite of those which confer a right by prescription. A prescriptive right has its existence in an uninterrupted user for at least twenty-one years, acquiesced in by the party having the right, and hence after such long acquiescence a grant will be presumed. But acquiescence is not to be presumed against a party who has no choice but to acquiesce, as is the case where private property is taken for public use by authority of the state. A right by prescription never grows up under such circumstances. If the defendants, therefore, had the right to rebuild the dam and flow back the water on the plaintiff's land, to the same extent the company had previously done, that right must flow from the contract, and the law arising upon it.

It is so well settled by the fundamental law, the constitution, that private property cannot be taken for private use, that it is always assumed as a postulate, and no argument is needed to sustain it. Following this principle to its legitimate results, one of which is that when private property is taken for public use by a corporation invested with the right of eminent domain, if that use ceases it returns or reverts to the owner of the soil from whom it was taken. This is always the case where the right, as in this case, is but an easement, as will be seen by the following references, among numerous other authorities, to the same effect: 11 Wright 320, 331; 14 Id. 436; 12 Ohio N. S. 629; 5 Paige 137; 9 Barb. 350; 12 Wend. 473; 36 Barb. 162; and recently, in Lance *v.* Harvey, *ante*, p. 16. Adherence to this rule is the only mode by which a corporation is to be held from diverting its acquisitions obtained in the name of public necessity to private uses, and doing indirectly what cannot be done directly.

The grant under which the defendants claim the right to maintain the dam in its height and efficiency, as it existed when used by the company, fails in effect for two reasons. The first, as already stated, is, that user by the company having ceased, and the

works being abandoned, the authority of the company over them ceased with the user, and the easement acquired, reverted to the owners of the property from whom taken. The authorities cited prove this. Secondly, the grant itself being of an incident connected with or arising out of the principal object in granting the charter to the company, must necessarily expire with the principal, and cease when that ceases. In the nature of things, there could be no fee-simple estate in it. The grant might be perpetual if the works continued to be so, but its perpetuity would depend upon that. The company could not be compelled to keep up their works in order to furnish a surplus of water to fill the terms of the grant. This we held in Cass *et al. v.* Penna. Railroad Co., at the last term of this court at Pittsburg (1 P. F. Smith 351). Such a grant, in its enjoyment, is as permanent only as the creation of which it is an incident, and necessarily as unstable. Like the natural phenomenon of the shadow cast by a substance, it vanishes when the substance disappears.

But it is said the Act of Assembly authorized a conveyance in fee of the water from the works of the company, and that the grant conforms to the authority of the act. "To be used," says the act, "in such manner and on such terms as they (the company) may think proper." If, therefore, the company did not "think proper" to maintain a particular dam, the use of the water by the grantee would, on the very terms of the grant, cease. What, therefore, becomes of the fee-simple right in a thing which has in itself ceased to exist? The supposed answer to that consists in what the defendants claim, namely, to be substituted for the company; not to furnish a highway for the public —nor to maintain the works for public, but for private use. This encounters the difficulty already referred to, viz., it would sanction the diversion of property, taken in the name of the public for public and general use, to private and individual purposes, which would be as contrary to natural right as to the constitution of the state. It is not possible to entertain the position conceded to the defendants by the court, unless we assume that the franchises of the company passed to the grantee of the water-right. The company had no authority to make such a grant. They were simply authorized to sell the surplus water from their "sluices, canals or other devices," "to be used in such manner and on such terms as they may think proper." Besides, it is not possible to conceive of the existence of a franchise shorn of the conditions and terms on which it was granted. The defendants, if they can legally set back the water on the plaintiff's land by maintaining dam No. 1, must show some authority, in fact or law, not disclosed on the trial below.

The clause in the 24th section of the act incorporating the company, in which it is provided that in case of forfeiture or

resumption by the legislature of the rights, privileges and fran-
chises of the company, the rights of individuals to the water-
power under grants by the company should not be forfeited, does
not in the least help the defendants.   When the state forfeits
franchises, it does so usually by withdrawing and re-granting
them.  This differs essentially from the case of usurped franchises.
There none having existed, no transfer can take effect.   It is not
unlikely that if the state had withdrawn or forfeited the rights
of the company in the franchises granted them, she could not re-
grant them without protecting the rights of the grantees of water-
power, or compensating them.   So if she resumed the works her-
self.   But this would hold as well in favor of a license merely,
as a fee-simple estate.   This proves nothing in regard to the ex-
tent of defendant's title.

The fact of the abandonment by the corporation of its works
was all the plaintiff had to concern himself about in this case.
It is that fact which gives rise to the principle that abandoned
easements return or revive to the original owners.   This position,
therefore, does not present the case of a collateral impeachment
of the existence of the corporation, as contended for by the de-
fendants in error.

It follows from all this, that the defendants were not justified
in their alleged trespass upon the plaintiff's possessions by virtue
of any authority to erect or repair the dam in such a way as to
occasion it.   It matters not, in our opinion, whether the dam be
maintained by the defendants only at its original height, or higher
or lower, under the authority shown; if it occasion an overflow
of water on the land, or into the spring, or tail-race of the plain-
tiff's mill, be it ever so little, his rights are invaded so as to
entitle him to damages therefor.   The defendants possess no immu-
nity, that we can discover, which places them in this instance above
the common-law maxim, " *sic utere tuo ut alienum non lœdas.*"

In this view of the case it is perhaps not very material to notice
the assignment of error upon the rejection of the proposed re-
butting evidence of the plaintiff.   It is not likely the case will
take the same direction on another trial.   I may say, however,
that the modern rule is against technical objections to testimony.
It is true now, as formerly, that if a plaintiff's case require tes-
timony in regard to any particular matter, in order to sustain it,
and evidence be given, it cannot be accumulated under pretence
of rebutting that which the defendant has given, in answer to it.
That was hardly what was attempted in the case in hand.   It was
not material to the plaintiff to show the height of the original
dam, No. 1, in chief.   It was only necessary that he should show
himself injured by the obstruction maintained in the stream by the
defendants.   He could rest on that until some answer was shown.
He did, however, show by one witness, directly examined by him

[*Jessup v.* Loucks.]

to the point, the height of the original dam. This was evidently with a view to answer some collateral matter. It was certainly not essential to his case. But in the defendant's case, their success depended mainly, as they supposed, at least, on showing that the new dam was no higher than the old, and this brought largely into question its height. Having given much evidence as to that, and that it was so many feet and inches in height, the plaintiff offered to rebut this by the engineer's bench-marks on the ground and the field-notes of the engineer. Seeing that the defendants claimed under the company, the acts of its agents in erecting or constructing the dam were evidence against them. It is true, this is not likely to appear in the same shape again ; and although it is not necessary to say we reverse for this reason, yet we think the court should not have excluded the plaintiff's rebutting evidence.

No doubt but the height of the old dam, as a water-mark, may again become material ; and if so, while a portion of the offered testimony might not be evidence in the changed aspect of the case, such as the engineer's field-notes, yet all the work on the ground going to establish its height would be evidence. But we will not in advance lay down any rule on this point. As the case must be tried on different principles, if tried again, from those assumed on the last trial, we think we need not notice the many other assignments of error, in some of which there may have been error in the aspect in which the case was presented, but in most of which we see nothing wrong. On the question of back-water, and whether it exists or not, there is usually much diversity in the testimony, and generally great liberality in admitting whatever will shed light on the subject. No doubt this course will be pursued as far as consistent with the rules of evidence on another trial. It will be our duty to say whether or not it has been so done, if we are again called on to review the case.

Judgment reversed, and <i>venire de novo</i> awarded.