## Graham et ux., Appellants, *v.* Safe Harbor Water Power Corporation.

Argued May 22, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and LINN, JJ.

*Vincent K. Keesey,* with him *George Hay Kain,* for appellants.

*Frederick B. Gerber,* with him *George T. Hambright* and *John E. Malone,* for appellee.

Opinion by Mr. Justice Maxey, June 30, 1934:

The question here is whether the right acquired to flood another's land can be lost by its nonexercise for twenty-one years. In 1902, Hiram S. Young owned a tract of land bounded on the east by the Susquehanna River. At that time there was a wharf along the river used by Young in connection with a ferry operated by him, and another part of the eastern portion of his property was used as a coal yard. On the western part of his property along the tow path was his residence and outbuildings. On June 16, 1902, Young and his wife, by an instrument bearing that date and recorded January 25, 1906, conveyed to John Witmer "the right at any and at all times hereafter, to cause the water of the Susquehanna River to flow back upon, and overflow, or be withdrawn from the land of the" grantor. This land was fully described by metes and bounds, as follows: "Bounded on the north by lands of William Sittler on the west by lands of D. W. Detwiler on the south by lands of Mrs. Sittler, on the east by the Susquehanna River this being the ferry property and coal yard." The defendant subsequently became the owner of the floodage rights and acquired them before the dam was built. On August 4, 1906, Young and his wife, by deed executed and recorded on that day, conveyed the land above described to Harvey H. Lindemuth and Harry Wasbers, with covenant of general warranty. The deed contained no reference to the prior grant of the right to flood. By successive conveyances which contained covenants of general warranty, but none of which referred to the grant by Young to Witmer, title to the land was vested in the plaintiffs, who instituted this action of trespass to recover damages for the flooding of their property by the erection of a dam in 1931 by defendant across the Susquehanna River. When Lindemuth and Wasbers acquired the land from Young they entered into possession and they and their successors in title exercised various acts of ownership thereon. These acts plaintiffs con-

tended were sufficient to extinguish by adverse possession the "paper right" to flood owned by defendant. The trial court held that the evidence on this point was insufficient to submit to the jury. Plaintiffs also contended at the trial that the right to flood was limited to that part of their land which was used by Young, at the time of the grant, as a ferry and coal yard.

The jury was directed to find a verdict in favor of the defendant, upon which judgment was subsequently entered.

The law is well settled that "the adverse possession that will bar easements must be actual, continuous, adverse, visible, notorious, and hostile possession of the land in question for twenty-one years": Phila. Elec. Co. v. Phila., 303 Pa. 422, 429, 154 A. 492. The weakness of plaintiffs' position is the fact that the possession pleaded and proved was not "adverse" or "hostile" to defendant's floodage rights. If, for example, plaintiffs or their predecessors had built on his land barriers that would have prevented the floodage by defendant of these lands, and these barriers existed for twenty-one years, the possession might be considered as "adverse" and "hostile" to the floodage rights which defendant owned and which he had the legal right to exercise. The use of the property by the subsequent grantors of Young and wife, did not interfere with the easement which Young and wife conveyed to John Witmer, "his heirs, executors, administrators and assigns." In Mercantile Library Co. of Phila. v. Fidelity Trust Co., 235 Pa. 5, 83 A. 592, this court said: "In this Commonwealth the rule always has been that the owner of land who grants a right of way over it conveys nothing but the right of passage and reserves all incidents of ownership not granted." In the case of Duross v. Singer, 224 Pa. 573, 73 A. 951, we said: "The grant of a fee subject to an easement carries with it the right to make any use of the servient soil that does not interfere with the easement." On this phase of the case nothing can be added to what Judge NILES has well said

in his opinion, refusing a new trial: "The record is barren of any offer of evidence which could establish any such adverse possession. The use of the fields and buildings after the original grant by the original grantor, or his successive assigns, indicated by the offered evidence, could not properly be submitted to the jury to sustain such a claim. Such use and occupation was not tortious, or denial of the right of the owners under the original floodage grant. Neither the defendant nor any of its predecessors in title could have enjoined such possession or use, or maintained any action on account of the same. Young, the original grantor, did not convey the land. He merely granted floodage rights over the same, and released damages for injuries arising therefrom. Title to the land, subject to the right granted, remained in him, his heirs, and assigns. Acquiescence is not to be presumed against a party who has no choice but to acquiesce, and no reason to complain of an act that does not violate his rights: Jessop v. Loucks, 55 Pa. 350."

In some states it is provided by statute that the failure to use an easement for a specified length of time is in itself sufficient to terminate it, but the rule in this Commonwealth is that mere nonuse of an easement created by grant will not work an extinguishment of the easement no matter what the duration of the nonuser. "If the instrument contain the grant of an easement or privilege to either party in the land or the water, against such a grant there is no statute of limitation without actual, hostile and adverse possession, and certainly no prescription or presumption from mere nonuser. Nothing less than an absolute denial of the right, followed by an enjoyment inconsistent with its existence for a period of twenty-one years or more, can amount to an extinguishment of it": Lindeman v. Lindsey, 69 Pa. 93, 99. The possession by the plaintiffs and their predecessors in title of the servient estate was not hostile and adverse to the easement owned by the defendant because this possession in no decree infringed upon the latter's rights.

Appellant further contends that the right of floodage was confined to that part of the property in question which at the time was used for a ferry and coal yard. Plaintiff argues that although the description referred to took in all of the land of the grantor, the words "being the ferry property and coal yard" restricted the floodage rights to the land actually occupied by the ferry and coal yard. As to this, the court below said: "Such a strained interpretation as suggested would give no reasonable, lawful, or effective meaning to the description of all of grantor's land bounded by the land of other owners on the north, west and south. ...... The words 'being the ferry property and coal yard' did not cut down the embracing definite boundaries, but only added an item of identification." This interpretation is obviously reasonable and correct.

The judgment is affirmed.