**GIMBEL BROS., INC.**

v.

**MARKETTE CORPORATION and Don Tesauro.**

Civ. A. No. 24458.

United States District Court
E. D. Pennsylvania.

Dec. 14, 1961.

———◆———

Charles M. Solomon, Philadelphia, Pa., for plaintiff.

Jacob Kalish, Philadelphia, Pa., for defendant Markette.

S. Robert Levant, Philadelphia, Pa., for defendant Tesauro.

VAN DUSEN, District Judge.

This case is now before the court on defendants' Motions for New Trial after a special verdict for plaintiff on its claim for the costs of tying-in an alleged party wall between 817 Chestnut Street, Philadelphia (owned by Markette) and 819 Chestnut Street, Philadelphia (owned by Gimbels) to plaintiff's 12-story building erected entirely on its property at 819 Chestnut Street. Also, the defendant Tesauro received a special verdict of $1500.00 on his counterclaim, where he demanded judgment of $9,880. for replacement of parts of the wall and damages due to demolition delays. The jury denied defendant Markette any recovery on its counterclaim for the value of the wall alleged by it to be on its property (see question B).[1]

I. The special verdict of the jury (Document No. 24) was as follows:

"1. Does the west wall of the property owned by Markette Corporation straddle the deed line?

Yes or No Yes

"2. During the period of 1926 to 1957, was the wall used in common as the east wall of plaintiff's building and the west wall of the building owned by defendant Markette Corporation, and its predecessors?

Yes or No Yes

"3. Has the plaintiff, Gimbel Bros., Inc., abandoned its use of the wall as a party wall

(a) for purposes of protection from the elements and from fire?

Yes or No No

(b) for purposes of support of buildings?

Yes or No Yes

"4. Did the demolition of the building of defendant Markette Corporation endanger the wall and the plaintiff's use thereof as a party wall for the purposes stated in question 3(a)?

Yes or No Yes

"5. Did the defendant, Don Tesauro, acting under the instructions of the defendant, Markette Corporation, in 1957 attempt to demolish any part of the wall on the plaintiff's side of the deed line?

Yes or No Yes

"6. Is the plaintiff using the wall now for any purpose other than the purpose for which the wall was used by the plaintiff from 1926 to 1957?

Yes or No No

"7. Did the manner of tying-in by Gimbel Bros. render the wall unusable for support purposes by Markette?

Yes or No No

"8. Was the removal of all the bricks at the part of the west wall of 817 Chestnut Street near the Chestnut Street end, which was done in July 1957, performed at the request of plaintiff?

Yes or No No

[Separate Page]

"A. Was the west wall of 817 Chestnut Street a party wall of the owners of 817 and 819 Chestnut Street for purposes of protection from the elements and from fire in the summer of 1957?

Yes or No Yes

"B. What are the damages, if any, to defendant Markette from tying in of the wall to plaintiff's building in the summer of 1957?

(Markette claims value of wall on 817 property is at least $27,000. and value on 819 property is at most $13,000.)

$ None

"C. What are the damages, if any, to defendant Tesauro from action by plaintiff with reference to the wall in the summer of 1957?

(Tesauro claims $5600. loss under DT–10 for delay and $4288. for replacing portions of wall.)

$ 1,500.00"

It should be noted that the word "defendant" was written opposite questions 3, 7, 8, B and C, since the trial judge instructed that the defendants had the burden of proof on these questions (N. T. 500).

The alleged party wall is a brick wall approximately 50 feet high which now separates the Gimbel Building at 819 Chestnut Street, Philadelphia, Pennsylvania, from the parking lot owned by defendant Markette Corporation on the northwest corner of 8th and Chestnut Streets, Philadelphia, Pennsylvania. The following summary of the evidence at pp. 1–2 of the plaintiff's brief (Document No. 33) is substantially correct:

"The wall extends from the north side of Chestnut Street 173 feet in a northerly direction to the south side of Ranstead Street. It was built so many years ago that no witness was able to testify concerning its erection. The testimony (as accepted by the jury and) which is substantially without contradiction established that the wall is approximately 24 inches thick at the ground level and that at every point along the length of the wall a portion of the wall is on either side of the deed line between the two properties. Prior to 1926, the plaintiff and its predecessors apparently used the wall to support the existing buildings on the plaintiff's side. In 1926, the plaintiff, having acquired title, erected a 12-story steel frame building on the premises at 819 Chestnut Street flush against the wall, but not depending upon the wall for support. The wall in question was used as a curtain wall enclosing the east side of the plaintiff's building, protecting the interior of the building from the elements, from fire, and other such hazards.

"Thirty years later, in October, 1956, the defendant Markette Corporation acquired title to the adjoining four-story building at 817 Chestnut Street. In December, 1956, defendant Markette Corporation engaged defendant Don Tesauro to demolish the building at 817 Chestnut Street.

"On instructions from Markette Corporation, defendant Don Tesauro began to demolish the upper portion of the wall in question. Upon protest from the plaintiff the demolition of the wall was ordered stopped.

"Pursuant to conferences between the parties a written agreement was entered into on July 26, 1957, providing that the wall be restored. Inasmuch as the wall would not stand by itself, it was agreed that the wall would be tied in to the Gimbel Building by bolts at a cost of $3,850.-00, to be paid by the plaintiff, and that the replacement of brick be made at the expense of defendant Tesauro. This action was brought to determine the liability of the respective parties for the expense of supporting the wall in place, for which the plaintiff made claim, and for the expense of replacing the brick, for which defendant Tesauro has made counterclaim. Defendant Tesauro also made counterclaim for recovery of the penalty paid by him to defendant Markette for the delay in the completion of the demolition. Defendant Markette filed a counterclaim for the cost of construction of the wall and for the reasonable value of the use of the wall taken at one-half the cost of constructing it."

I. A wall which is a dividing wall between two buildings held in separate ownership and is used equally as an exterior wall for each may be a party wall, even though it is not used for support.

The Pennsylvania cases support the following definition of a party wall, as applied to the facts of this case, in the charge (N. T. 461–2):

"* * * a party wall is a dividing wall between two buildings held in separate ownership which is used equally as an exterior wall for each. It is not necessary that such a wall be used to support the roof or floors of both buildings. It is enough that the wall be used as a curtain wall, protecting the buildings from the elements and protecting the spread of fire."

See McVey v. Durkin, 136 Pa. 418, 20 A. 541 (1890); Neilson v. Hummel, 280 Pa. 483, 124 A. 642 (1924); Pennsylvania Co., etc. v. Odd Fellows, 50 Pa.Super. 255 (1912); Moye v. Morrison, 81 Pa.Super. 251 (1923). In the Moye case, supra, the court used this language at page 257:

"The front wall of the new building extended up to and adjoined the party wall, the roof, at the time the action was brought, extended up to and adjoined the party wall; the party wall was the only wall which enclosed the new building upon that side. It was not necessary, in order to involve a use of the wall contemplated by the statute, that the party wall should carry the weight of the new building: * * *."

II. Markette could not tear down the building on 817, removing all support of the party wall formerly provided by the front and back walls and floors, without supplying any other support to prevent the wall from falling down to the east. (Pp. 2–5 of Markette's brief, being Document No. 34)[2]

█ Each adjoining owner has a cross-easement of support in a party wall and neither such owner can so alter his building as to cause the wall to fall down through lack of support on his side. See Thompson v. DeLong, 267 Pa. 212, 216, 110 A. 251, 252, 9 A.L.R. 1326 (1920), and cases there cited. In the Thompson case, supra, the court said, " * * * plaintiff had an easement in defendant's part (of the party wall) which the latter could not destroy."

III. Abandonment of a party wall for purposes of support of a building does not necessarily mean abandonment of such a wall for protection from the elements and fire.

█ The charge on the issues of abandonment (N. T. 483–4) is in accordance with the Pennsylvania cases cited under I above, holding that a party wall may exist for the purposes of protection from the elements and fire, even though it does not support the floors or roof of the building. See, also, Restatement of Property, § 504, comment d; Graham et ux. v. Safe Harbor Water Power Corp., 315 Pa. 572, 575, 173 A. 311 (1934); Werry et ux. v. Sheldon, 148 Pa.Super. 13, 18, 24 A.2d 631 (1942).[3]

The evidence justified the jury's finding that the west side of the party wall was used for supporting beams of the Gimbel Building at 819 Chestnut Street prior to the erection of the new building at that location in 1926 (see, for example, Exhibits P–3 and 5), but that after 1926 the party wall was only used by the owner of 819 Chestnut Street for protection against the elements and fire. For this reason, questions 3(a) and (b) were proper and the answer to question 3(b) does not negative the answer to question 3(a).

█ When the application for a permit to construct a new building at 819 Chestnut Street (DT–13) was filed by plaintiff in July 1925, it failed to fill in the following blank on the second page of the form:

"If a Wall or Part of a Wall Already Built Is to Be Used, Fill up the Following:

"The undersigned gives notice that ——— intend to use the ——— ———————— wall of building ———————————————— as party wall in the erection of the building hereinbefore described, and respectfully requests that the same be examined and a permit granted therefore. * * *"

Counsel for defendant and third-party defendant contended in their closing arguments that this omission constituted

---

2. The footnote on p. 4 of this brief is inaccurate. The evidence showed that the west wall of 817 Chestnut Street was against the steel piers of plaintiff's 1926 building and physically joined to it with cement between the 4th and 5th floors of the Gimbel Building.

3. These cases state the Pennsylvania rule that "mere nonuse of an easement created by grant will not work an extinguishment of the easement no matter what the duration of the nonuser" 315 Pa. 575, 173 A. 311, 312.

proof of abandonment of any prior use of this wall as a party wall.

After instructing the jury that non-use of a party wall was evidence of intent to abandon the wall as a party wall and that the effectiveness of such non-use as such evidence was dependent on all the circumstances (N. T. 483), the trial judge stated that, in his view, the support of the new building by its own piers, rather than by the party wall, was the cause of the failure to fill out this part of the form (DT–13) and concluded with this language (N. T. 484) :[4]

"The defendant argues to the contrary, and their arguments are entitled to just as much consideration as my view on it; but, on the other hand, I have a duty not to allow you to be confused, and I want to call your attention to the purpose for which that particular application was filed, in evaluating it. And so I suggest that you read it all and consider it."

This comment was not reversible error. See Burch v. Reading Co., 140 F. Supp. 136, 143–4 (D.C.E.D.Pa.1956), aff'd 240 F.2d 574 (3rd Cir.1957), cert. den. 353 U.S. 965, 77 S.Ct. 1049, 1 L.Ed. 2d 914 (1957).

IV. The contention of the defendant Tesauro that there were three walls between the interior of the buildings at 817 and 819 Chestnut Street was presented to the jury.

Although defendant Tesauro objects that, during the trial judge's discussion of question 1, his argument that there were two walls between the interior of 817 Chestnut Street and the glazed tile wall built on premises 819 Chestnut Street in 1926 was not mentioned (pp. 11 ff. of Tesauro brief, being Document No. 35), the trial judge reminded the jury of this contention twice during the in-

structions given to the jury (N. T. 470 and 508–9). The trial judge emphasized to the jury several times that it was their memory of the testimony (and not that of the trial judge) which controlled their answers to the questions (for example, N. T. 451, 455 and 469).

The record affords very slim support to the claim of Tesauro's counsel that the jury should have found there were two separate walls in addition to the structure erected in 1926 (see N.T. 259–275 & 314–322).[5] The jury had the right to reject the contention that there were two walls in addition to the structure erected in 1926 on 819 Chestnut Street.
V. Rights which adjoining owners have in a party wall may be acquired in any division wall near a boundary line by prescription (pp. 13 ff. of Markette's brief, being Document No. 34, p. 23 of Tesauro's brief, being Document No. 35, and pp. 3 & 4 of letter of October 16 attached to that brief).

The charge on the issue of this wall becoming a party wall by prescription (N. T. 475–6) was in accordance with the Pennsylvania cases. See McVey v. Durkin, 136 Pa. 418, 425, 20 A. 541 (1890), and Bright v. Morgan, 218 Pa. 178, 184, 67 A. 58 (1907), quotations from which were incorporated in the charge at the above pages. Instructing the jury on this point was pertinent in view of the similarity between the evidence presented in this case and the factual situation in the McVey case, supra. The evidence in this case justified the jury's answer to question 2.

VI. Defendant is not entitled, as a matter of law, to the value of that portion of the party wall completely within its property line and the jury could find that plaintiff was entitled to tie in the party wall to its structure on 819 Chestnut Street in order to keep it from falling

4. When this exhibit was offered in evidence, the trial judge stated to the jury that "possibly they (plaintiff) should have made some reference to it (the party wall)" on the form (N. T. 371).

5. Mr. Tesauro relied on the absence of "header" bricks to support his conten-

tion of two walls at the Chestnut Street end, but there is no positive testimony that eighty to a hundred years ago, when this structure was built, walls were always constructed using bricks laid in the fashion described by this party defendant.

down. (See pp. 11–12 of Markette's brief, being Document No. 34, and letter of October 16, 1961 attached to that brief.)

█ Markette's points for charge 13 and 14 (Document No. 21) were positive conclusions which were not proper under the evidence.[6] The evidence fully supported the jury's answer to question 4 that the demolition endangered the party wall and plaintiff was justified in advising defendant Tesauro in its letter of 7/22/57 (P–14) that he had no right to weaken seriously the support of this wall. In view of the agreement of July 26, 1957 (P–7), plaintiff clearly had the right to substitute a proper support for the wall in accordance with the terms of that contract.

Under the evidence in this case, there was no showing who the builder of this party wall was and there was not sufficient evidence to justify a jury in finding that a predecessor in title of Markette had built it and had never been paid the adjoining owner's share of its cost.

In view of the answers of the jury to the special questions (especially questions 1, 2, 4, 5, A and B),[7] Markette is not entitled to any recovery for the protrusion of the bolts and anchors to the east of the party wall (see photograph marked Exhibit P–2). The possibility of recovery for the protrusion of these bolts and anchors was discussed prior to the closing arguments (N.T. 424–7) and the trial judge stated, at N.T. 426, "You might get some damages for that." It was agreed by all counsel and the trial judge that these bolts and anchors protruded to the east (N.T. 427) and question B (No. 2 on Exhibit C–1 as modified) was approved by counsel for Markette (N.T. 414–426). Markette's counsel had every opportunity to argue this point to the jury and to object to the charge if it did not cover this point properly. In view of F.R.Civ.P. 51, 28 U.S.C. A., it is now too late to object to the failure of the jury to include damages for this protrusion in the answer to question B.

Furthermore, a fair reading of the contract of July 26, 1957 (Exhibit P–7), together with the plan of Allabach and Rennis dated July 24, 1957 (Exhibit P–8), makes clear that the parties to that contract contemplated that the bolts and anchors of which Markette now complains were anticipated by the following language of the contract, since they appeared on the plans marked P–8:

"2. 'Gimbel' shall tie in the said west wall of premises 817 Chestnut Street, Philadelphia, Pa. to the east

---

6. The points for charge (Document No. 21) read as follows:

"13. Even though the jury should conclude that the wall is presently a party wall, plaintiff could not legally tie-into that portion of the wall that stood within the *property line of defendant Markette.*

"14. If the jury should conclude as set forth in number 13 then defendant *is entitled to the value of the wall that was completely within the party line."*

7. Except for Tesauro's exception to questions 3(a) and (b), it is difficult to find in the transcript any specific objections to the questions complained of in these Motions For New Trial. On April 11, 1961 (the second day of the trial), counsel for plaintiff asked the trial judge to submit special questions to the jury in the form contained in his trial memorandum (Document No. 17) which had been filed and served at the start of the trial on April 10 (N. T. 309–310). At the request of counsel for defendant Tesauro, consideration of the special questions was postponed until the next day and counsel for defendants were given until 10 A.M. on the next day to submit *any suggested questions they had* (N. T. 310–311). At that time, plaintiff filed amplified questions (Document No. 18), which were discussed with counsel after lunch on that date (N. T. 400 ff.). The trial judge suggested three additional questions (C–1) to counsel at that time (N. T. 414) and counsel for defendant Markette submitted questions (Document No. 19) for the first time (N. T. 414), one of which was incorporated verbatim as question 7 of the questions submitted to the jury (Document No. 24). The other questions of defendant Markette were discussed at N. T. 427 ff.

wall of its own premises 819 Chestnut Street, Philadelphia, in accordance with plans and specifications prepared by Allabach and Rennis, Inc., engineers, * * *."

There was no waiver of any right in the wall itself by execution of the contract, but the parties cannot now complain of the method of supporting the wall as specifically shown in plans (Exhibit P–8) in existence when the contract was signed.

VII. Alleged errors of the trial judge in ruling on evidence are not grounds for a new trial.

■ Since the Motions For New Trial (Documents Nos. 27 and 28) do not mention these alleged errors, a new trial may not be granted for these reasons. See Russell v. Monongahela Railway Company, 262 F.2d 349 (3rd Cir.1958). Since these errors are discussed at length in defendant Tesauro's brief at pp. 2 ff., this brief comment may be useful.

■ The April 13, 1940, survey by the official surveyor (William H. H. Ogden,

Jr.) was properly admitted in evidence (see 28 P.S. §§ 91 & 91b; 28 U.S.C.A. § 1732; Moran v. Pittsburgh-Des Moines Steel Co., 183 F.2d 467, 472–3 (3rd Cir. 1950)). Since the survey was admissible, Mr. Stefanco, as a surveyor of Philadelphia (N.T. 16), could explain what the marks on the survey indicated. Furthermore, counsel for Tesauro never moved to strike the testimony complained of [8] (see N.T. 69 & 90) as the trial judge permitted, using this language at N. T. 33: "* * * you can ask him on cross-examination and move to strike at that time" (N.T. 33).

Defendant Tesauro's objections to the ruling on the testimony of Mr. Rennis as a ground for new trial (pp. 2 ff. of Document No. 35) are similarly without merit. See F.R.Civ.P. 51 and Burch v. Reading Co., supra, 140 F.Supp. at pp. 143–4.

There is no merit in the other reasons alleged for a new trial.[9]

For the foregoing reasons, the defendants' post-trial motions will be denied.[10]

8. It is noted that the purported quotation of the language of the court at the top of page 7 of Tesauro's brief is inaccurate (see first full paragraph at N. T. 33, being Document No. 31a).

9. Defendant Tesauro presents several reasons for new trial in its Motion (Document No. 28) and brief (Document No. 35), which the trial judge finds, after careful consideration of the record and the briefs, are not proper grounds for a new trial, particularly in view of F.R. Civ.P. 51 and 61. For example, contrary to the statement at page 19 of Document No. 35, both the testimony of Mr. Rennis (N. T. 217) and that of Mr. Tesauro states that the steel piers of the 1926 building supported the west wall of 817 Chestnut Street on the west. There was no need to tie in the wall in 1926, since the back and front walls and floors of 817 Chestnut Street supported this wall on the east until defendants removed such supports in the spring and summer

of 1957. Although Tesauro complains in his brief of question 1 (page 10 of Document No. 35), his counsel approved of this question at the trial (N. T. 403). The complaints in both motions for new trial (Documents Nos. 27 and 28) object to many of the special questions, even though few specific objections were made to such questions when they were discussed at the close of the evidence (N. T. 400–432). See footnote 7 above.

10. The briefs of the parties, together with their supplemental letters of October 3 and October 16 (two), which have been attached to the briefs, have been placed in the Clerk's file. as Documents Nos. 33–35, inclusive. By letter of June 6, 1961, defendant Markette requested the continuance of the argument on the post-trial motions then scheduled for June 26. As the result of the attached letter of August 10, 1961, from the defendant Tesauro, the argument was again continued until October.