## H. A. MUHLENBERG v. JOHN HENNING ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Argued March 2, 1887—Decided April 18, 1887.

In a five year ore lease, the lessees covenanted to pay 35 cents per ton for every ton of merchantable iron ore mined, and to mine at least 1500 tons annually during the term, or, in default thereof, to pay a royalty of $525 annually, and that the lease should be forfeited at the option of the lessors, if at the end of each year at least $525 as rent or royalty had not been paid. In an action of covenant to recover unpaid royalties for two years under the default rate, an affidavit of defence was filed averring that, though the defendants had operated the mines in a workmanlike and skillful manner for about nine months, yet, on account of the non-existence of sufficient ore and its inferior and unmerchantable quality, they were unable to continue: *Held*, that the affidavit exhibited a good defence to the action.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

No. 34 January Term 1887, Sup. Ct.; court below, No. 122 April Term 1886, C. P.

On July 28, 1883, Hiester H. and Henry A. Muhlenberg, of the one part, and John Henning and James H. Madeira, of the other part, executed a contract under seal, in which the former granted, bargained and sold to the latter for the period of five years the exclusive right to all the iron ore in a tract of fifty acres in Berks county. *Inter alia*, the lessees, as they were termed in the contract, covenanted to pay to the lessors, "for every ton of 2240 lbs. in weight of clean and merchantable iron ore raised, mined and taken away by them or their order from the said premises, the price of 35 cents per ton," etc. The said lessees further covenanted "to raise, mine, carry away and sell at least 1500 tons of iron ore annually during the continuance of this lease; or, in default thereof, to pay a royalty of $525 annually; and that this lease shall be forfeited at the option of the lessors if at the

end of each year at least $525, as rent or royalty, has not been paid during the course of the year."

On April 1, 1886, an action of covenant was brought upon the contract against the defendants, the narr. declaring for "the yearly sum, rental or royalty of $525 annually," for two years ending July 28, 1885. To this claim of the plaintiffs, sustained by affidavit, the defendants filed an affidavit of defence averring:

That, shortly after the execution of the lease upon which this suit is brought, they went into possession of the premises therein described, and erected thereon the necessary machinery for the proper prosecution of mining, digging and wash-ing the iron ore thereon; they also sunk a well, and thereby obtained a sufficient supply of water to properly wash and separate the same. That they expended more than $3,000 in erecting said machinery, and digging said well, and in carrying on said mining operations, and they were fully prepared and equipped to mine, dig and wash all the iron ore upon said tract. That in carrying on said operations they had employed eight or nine men for a period of about nine months; that they prosecuted the operations of mining, digging and wash-ing the iron ore with due diligence for said period of time in a workmanlike and skillful manner; both of the defendants being skillful and practical miners of iron ore, and having large experience in the same.

That, notwithstanding the fact that the said tract was oper-ated by them as aforesaid, on account of the non-existence of sufficient ore in said tract and of the inferior quality of the same, they were unable to carry on and continue the operations of mining, digging and washing the iron ore upon said tract, as contemplated by the parties to said agreement. That, after they had thus fully explored, searched for and developed the ore on said tract, and finding that the quantity and quality of the same were such as to render it impossible for them to perform their covenants in the lease, your deponent called upon H. A. Muhlenberg, Esq., one of the plaintiffs, and informed him of the condition of the ore in said tract, and stated to him that it was not of sufficient quantity and of the quality requisite to enable them to comply with their agreement; and that, if under these circumstances the lessors intended to insist upon

the payment of royalty, they would tear away their machinery and surrender it. That thereupon the said plaintiff requested your deponent not to remove said machinery, but should leave it stand, should wait until times got better, that they would not look for royalty so long as they did not operate the mine. That thereupon the defendants complied with said request and did not remove the machinery from the premises, but that, since said request, the defendants have not resumed mining operations upon said tract, nor has anything occurred to warrant them to so resume.

A supplemental affidavit of defence averred in addition:

That the iron ore which is in the tract of land described in the lease from the plaintiffs to the defendants, after it is properly and carefully mined, washed and prepared for market, as iron ore is usually prepared for market, is not, because of its inferior quality, merchantable; and, further, deponent says that all the negotiations between the defendants relative to the obtaining and execution of the lease and the terms of the same were had and made with Henry A. Muhlenberg, Esq., one of the plaintiffs, acting for himself and his said co-plaintiff, H. H. Muhlenberg, now deceased.

A rule granted to show cause why judgment should not be entered against the defendants for want of a sufficient affidavit of defence was discharged by the court below, J. HAGENMAN, P. J., whereupon, after exception sealed, the plaintiff took this writ, assigning for error the discharge of said rule, and the refusal to enter judgment against defendants for the amount of the claim.

*Mr. G. A. Endlich* and *Mr. H. A. Muhlenberg*, for the plaintiff in error:

The affidavit of defence cannot avail to prevent judgment, if on the trial the defendants would not be permitted to produce proof of the matter alleged: Leonard v. Fuller, 1 Penny. 387; Heaton v. Horton, 35 Leg. Int. 146; s. c. 25 Pittsb. L. J. 118; Tatman v. Been, 1 W. N. 107; West H. B. & L. A. v. Morganthal, 2 Pears. 343; and none of the matters alleged in these affidavits would be admissible in evidence.

The action is not to recover royalties for the coal mined, nor for damages for not mining, but for a fixed and certain

rental. The grant is of a privilege, to be paid for whether used or not: Johnston v. Cowan, 59 Penn. St. 275; not of a mere license, but of an interest: Harlan v. Coal Co., 35 Penn. St. 287; and within the affidavit of defence law: Johnston v. Cowan, *supra*; Eshelman v. Thompson, 62 Penn. St. 495.

1. As to the defect in quantity:—It has been uniformly held by the English courts that a mining lease upon royalties, reserving however a sum certain payable at all events, implies no warranty that there is ore: Jeffries v. Fair, L. R. 4 Ch. D. 448; Jowett v. Spence, 1 Exch. 647; Jervis v. Tompkinson, 1 H. & N. 195; Bute v. Thompson, 13 M. & W. 487. The same doctrine has been followed by this court in Harlan v. Coal Co., 35 Penn. St. 287.

2. As to the defect in quality:—Defect in quality is never a defence in Pennsylvania in the absence of fraud, unless there has been a guaranty, and there is no guaranty expressed in this agreement, and under the foregoing authorities none can be implied. It has been expressly decided that where a sum certain is reserved it is recoverable though no ore at all were found *worth working :* Ridgway v. Sneyd, 1 Kay 627.

3. As to the subsequent parol modification:—The grant being of an interest: Harlan v. Coal Co., *supra*, and for five years, under the statute of frauds, March 21, 1772, 1 Sm. L. 389, all its material parts must be in writing, and a subsequent modifying contract must be in writing: 2 Whart. Ev. § 1025; Stowell v. Robinson, 3 Bing. N. C. 928; Marshall v. Lynn, 6 M. & W. 109; Tyers v. Iron Co., L. R. 10 Exch. 195, reversing s. c. L. R. 8 Exch. 305. So this court held that a parol surrender of property, the transfer of which must be in writing, was void: Wiser v. Allen, 92 Penn. St. 317; and a distinguishing case is Wilgus v. Whitehead, 89 Idem 131.

But, even if evidence of a parol modification could be received, as of a new contract, such a new contract would have to be founded, as intimated in Wilgus v. Whitehead, *supra*, upon a new consideration, and to have been made before breach of the old, which is not in this defence, and cannot be assumed: Kaufman v. Mining Co., 105 Penn. St. 537; Whitehill v. Wilson, 3 P. & W. 405; Mannerbach v. Keppleman, 2 Wood. D. 137; Taylor v. Winters, 6 Phila. 126; Megargee v. Railroad Co., 2 W. N. 535. And defendants had no legal

or equitable right to surrender without liability : Kemble Coal
& Iron Co. v. Scott, 90 Penn. St. 332.

*Mr. Ruhl*, of *Ermentrout & Ruhl*, (*Mr. Henry C. G. Reber*
with him, for defendant in error).

Whilst the English courts have held in some cases that,
under a mining lease upon royalties, a sum certain ˙reserved
was recoverable though no ore was *found*, yet they have not
so held where the defence was made that none *existed*.    This
distinction is made in ˙the cases cited by the plaintiff in error :
Jowett v. Spencer, 1 Exch. 647 ; Jeffries v. Fair, L. R. 4 Ch.
D. 448 ; Jervis v. Tompkinson, 1 H. & N. 195 ; and we refer
to Clifford v. Watts, 18 W. R. 925.    None of these cases are
against the competency of evidence of the facts alleged in the
affidavits of defence.

The decisions of this court are quite in harmony with the
cases refered to :  Kemble v. Coal Co., 90 Penn. St. 344 ;  Har-
lan v. Coal Co., 35 Idem 287 ; Kemble Iron Co. v. Scott,
15 W. N. 220.    In Johnston v. Cowan, 59 Penn. St. 275, the
defendants were held liable because they had made ˙no efforts
to enjoy the fruits of their lease.

It is contended that this lease was a grant of an interest.
Of what interest ?   The lease describes it to be " the exclusive
right to all the iron ore contained in a certain ˙tract of land."
The contention is therefore predicated upon the assumption
that the land demised contains ore.    The affidavits of defence
aver that it did not contain ore, and the grant is therefore
inoperative.    Relief is granted where there is mutual mistake :
Kerr F. & M. 416 ;  Mays v. Dwight, 82 Penn. St. 464 ;
Hoover v. Senseman, 3 Cent. R. 540.

OPINION, MR. JUSTICE CLARK :

This action of covenant was brought upon a contract, under
seal, denominated a lease, and dated 28th July, 1883, by the
terms of which the lessors granted to the lessees the exclusive
right, for five years, to all the iron ore contained in a certain
tract of fifty acres of land therein described ; in consideration
whereof, the lessees agreed to pay to the lessors, for every ton
" of clean merchantable ore raised, mined and taken away by
them or their order from the said premises, the price of thirty-

five cents," etc. The lessees further agreed "to raise, mine, carry away and sell at least fifteen hundred tons of iron ore, annually, during the continuance of this lease, or, in default thereof, pay a royalty of $525, annually"; the lease to be forfeited at the option of the lessors if, at the end of any year, $525, as rent or royalty, had not been paid during the year.

It appears by the several affidavits of defence that the lessees, after the execution of the lease, promptly entered into the possession, and at an expense of $3,000 erected all the machinery and appliances necessary for the proper prosecution of the work; that they were fully equipped to mine, dig and wash all the iron ore upon the tract; that, with the aid of practical miners of large experience, they prosecuted their undertaking with due diligence for nine months or more in a workmanlike and skillful manner, but, after a full exploration and search, they failed to find sufficient ore to enable them to carry on and continue the operation as was contemplated in their contract; and, further, that the ore which they did find, and which the said tract contained, was of such inferior quality that, when properly and carefully mined, washed and prepared for market in the usual manner, it was not "merchantable iron ore"; that the lessees communicated these facts to the lessors, and the operation of the mines was thereupon discontinued, but the machinery was suffered to remain with the verbal understanding between the parties that, as long as the mine was not operated for the reasons stated, the royalty would not be required. On the 1st April, 1886, this suit was brought to recover two years royalty with the interest thereon. The question for our consideration is whether or not the affidavits exhibit a good defence to the whole or any part of the plaintiff's claim.

The lessees were without doubt bound to prosecute the work without delay. It was their duty to search for and find the ore, and to ascertain its quality; and, if ore in sufficient quantity and of proper quality could be found, they were held to raise fifteen hundred tons of it annually; failing in either, they were bound for the minimum stipulated royalty of $525 per year: Johnson v. Cowan, 59 Penn. St. 275.

If, however, it was established by actual and exhaustive search that, at the time of the contract, there was in fact no

ore in the land, or no ore of the kind contracted for, it cannot be pretended, upon any fair or reasonable construction of the contract, that the lessees were nevertheless bound for the "royalty" of $525 annually; for the payment of the royalty was undoubtedly based upon the assumption of the parties that ore, ore of the quality specified, existed there. The subject of sale, it is true, is the exclusive right to mine the iron ore, but for that right the lessors were to be compensated according to the number of tons of "clean and merchantable iron ore" mined; the lessees undertaking to mine fifteen hundred tons annually, "or in default thereof" to pay $525 royalty. And how could the lessees be *in default* in mining fifteen hundred tons annually, if there was no ore to mine? We are not to construe the contract to require the lessees to perform an impossible thing. The $525 is not a penalty, it is the price of the ore. The grant was of the ore in place, and, if the subject matter of the contract fail, the price is not payable. If there was no ore to mine, there could be no royalty to pay. As well might the vender of meat which proved to be putrid, or of a cargo of corn which had no existence, enforce collection from his vendee. We think the manifest meaning or intention of the parties, as exhibited by the terms of the contract, was that fifteen hundred tons "of clean and merchantable iron ore" were to be mined in each year, if that quality and quantity of ore were there found, and that the contract by necessary implication must be so construed.

There was no guarantee, it is true, on part of the lessors that any ore was to be found in the land, or that the operation would be profitable to the lessees, who certainly entered upon the enterprise at their own risk; the lessees, therefore, could have no recourse upon the lessors for their outlay in the event of failure : Harlan v. Lehigh Coal Co., 35 Penn. St. 287; on the other hand, if the latter were to bring an action against the former upon the covenant to work the mine, equity would interfere to prevent a recovery: Ridgway v. Sneyd, 1 Kay 627. But, the contract having been made upon the assumption of the parties that ore of the quality mentioned existed in the land, when it became manifest that the parties were mutually mistaken, the contract obligation ceases. It may turn out at the trial, of course, that the ore was in fact merchantable, but,

as the case is now presented, we must assume the facts to be as stated in the affidavits of defence.

This view of the case accords with and is fully sustained by the ruling of this court in the Kemble Coal and Iron Co. v. Scott, 15 W. N. C. 220. In that case, Scott granted to the company "the exclusive right to dig and take away the iron ore in a certain tract of land, the company covenanting to pay at the rate of fifty cents per ton of ore mined," etc.; and, further, that for any period of three years, after the first year, the rent, in the aggregate, should not be less than $10,000 whether ore to that extent was mined or not. At the end of four years, Scott brought suit and recovered a judgment for $10,000, rent accrued in the three preceding years, and, at the expiration of three years more, brought a second suit to recover $10,000, the alleged minimum rent for that term, and it was held competent for the company to prove, by way of defence, that the ore contained in the leased premises was insufficient in quantity to produce the amount of rent or royalty claimed by the plaintiff.

The authorities cited by the plaintiff in error are inapplicable to the case under consideration. In Jeffries v. Fair, L. R., 4 Ch. Div. 448, the lease was of a vein or seam of coal, with the overlying and underlying beds of clay, under a farm called Llwyndu, at £100 per annum "on a certain or dead rent," and royalties of 9d. per ton for the coal, and 4d. for the clay, the coal being necessary for working the clay with advantage. It was held that it was in consideration of the dead rent reserved the lessees obtained license to enter and search for the vein, and that the lessors were therefore entitled to an order for the payment of the dead rent.

In Jowett v. Spencer, 1 Exch. (W., H. & G.) 647, the covenant was to pay £40 for every statute acre of coal which should be found within certain premises, and, until the said price or consideration should be fully paid, to pay £40 per annum whether the whole of an acre of the said coal should in any such year be gotten or not. The sole question, under the pleadings, was whether the finding of the coal was a condition precedent to the plaintiff recovering the annual sum of £40; and it was decided that it was not, as the defendant was the proper party to find and ascertain the quantity of the

coal. In Jervis v. Thompson, 1 Exch. (H. & N.) 195, the lessees entered into the covenant knowing the exact state of the mine, and, with that in view, covenanted positively and absolutely to get the quantity of 2000 tons of salt in every year, or pay for the deficiency at the end of it, and therefore, whether they could be got easily or with difficulty, or even whether they existed at all, was held to be immaterial in the case of an absolute and unqualified covenant.

In the Marquis of Bute v. Thompson, 13 M. & W. 486, the plain intentions of the parties, as manifested on the face of the contract, was that the rent stipulated should be paid whether there was coal or not; there was an express provision in the alternative to pay the rent. See Clifford v. Watts, 18 W. R. 925.

We are clear in our convictions that the affidavits of defence in this case are such as should send the case to a jury.

Writ of error dismissed at the cost of the plaintiffs without prejudice, etc.