## Abraham Boyer and Kate Boyer, his Wife, to the use of the said Kate Boyer, *v.* Henry Fulmer, Appellant.

*Mines and mining—Minimum royalty—General rule.*

The ordinary provision contained in mining leases where a certain minimum amount is agreed upon to be taken out each year and if it is not taken out the lessee agrees to pay the royalty notwithstanding, is based upon the theory that the ore or coal is in place and can be taken out if proper efforts are made, and is intended as an incentive to compliance with the duty of adequate performance and of prompt payment.

*Mines and mining—Ore lease of undeveloped lands.*

Where undeveloped lands were leased for the purpose of digging for and mining ore, and the lease provided that the lessee should have the right to dig for, mine and take away the ore for a period of fifteen years, and to pay 60 cents per ton for every ton of ore sold from the premises during the term, to be paid monthly, but the amount to be paid to be not less than $400 in any one year, it was *held,* (1) that the parties contracted with reference to the iron ore which was supposed to exist, and did exist, on the lands demised; (2) that there was no agreement to pay a fixed absolute sum for the ore in place; (3) that the lessee was bound to use all proper efforts to find ore, mine and take it away, and that he was obliged to pay only for such ore as was mined or could be mined, and, if the ore gave out before the termination of the lease, the obligation to pay royalty ceased: Muhlenberg v. Henning et al., 116 Pa. 138; Kemble Coal & Iron Co. v. Scott, 15 W. N. C. 220; McCahan v. Wharton, 121 Pa. 424, followed. Timlin v. Brown et al., 158 Pa. 606, distinguished.

Argued March 11, 1896.   Appeal, No. 257, Jan. T., 1896, by defendant, from judgment of C. P. Northampton Co., Feb. T., 1893, No. 5, on verdict for plaintiffs.   Before Sterrett, C. J., Green, Williams, Mitchell and Fell, JJ.   Reversed. Mitchell, J., dissents.

Assumpsit for royalties on coal lease.   Before Schuyler, P. J.

On the trial the plaintiffs offered in evidence a lease between Sarah Steeley and others with Abraham Boyer, dated April 1, 1875, the material parts of which were as follows:

" The said party of the first part agrees to demise and let unto the said party of the second part for the purpose of carrying on the mining of iron ore, all the timber land of the said party of the first part situated etc. . . .

" The said second party to have the exclusive right to dig for, raise and take away iron ore, and shall continue the work during the term of fifteen years from the date hereof, and shall have the privilege to sink shafts, drive drifts, slopes and tunnels from the ore to the public road (but all holes dug in search for ore in which no ore is found shall be closed again by the second party), and second party to have the privilege to erect such machinery as may be necessary for this purpose of mining. . . .

" The second party agrees to pay the first party the sum of sixty cents for every ton of iron ore sold from said premises during said term, to be paid monthly, but the amount to be paid to said first party shall in no year be less than four hundred dollars, to be paid within the year respectively. But in case the second party should suspend the work for a time, or should not mine and sell iron ore in any year sufficient to make the annual sum due therefrom to the first party four hundred dollars, in such case, however, the said second party shall pay the first party the said annual sum of four hundred dollars, and second party shall have the right to take out and sell iron ore at a future time to make up for the money paid out as aforesaid for ore in advance (no interest, however, to be charged for money advanced as aforesaid), but no iron ore shall be taken out after the expiration of this lease for money advanced, and no money advanced as aforesaid shall ever be refunded."

The plaintiffs also offered in evidence an assignment dated September 1, 1876, from the lessee to Mrs. Boyer.

The plaintiffs also offered in evidence an agreement with the defendant in respect to said lease whereby Mrs. Boyer transferred to him all the right and privilege and estate which she had in the lease for ore mines on the land of Sarah Steeley and sisters, a copy of which was annexed.

Said agreement further provided as follows :

" And he also agrees to pay to the said Catharine Boyer, her heirs, executors, administrators and assigns, the additional sum of seventeen and one-half cents for each and every gross ton of

iron ore mined and taken away from the said premises, to be paid monthly to the said Catharine Boyer, *said payment to be between the last day of the month and the fifteenth day of the following month;* said ore to be weighed with a well adjusted scales to be furnished by the said Henry Fulmer, either at the mines or at the canal wharf at Durham, or the railroad station at Riegelsville, as he may choose, which is at all times to be subject to the inspection of the said Catharine Boyer, or her duly authorized agent, he, within ten days after the end of every month, is to furnish to her or her agent, a list containing the date and true weight of every load of iron ore taken away from the premises, and the name of the person hauling or taking away the same.

" And the said Henry Fulmer shall mine and take away and pay for as aforesaid, not less than one thousand tons of iron ore in each and every year.　He shall pay to said Catharine Boyer, her royalty of seventeen and one-half cents per ton on one thousand tons per annum *whether he mines that amount or not.* And also in case he should refuse or neglect to mine one thousand tons per annum and pay for the same, this assignment of the lease shall be null and void at the option of the said Catharine Boyer.

" In case the monthly payments to the said Catharine Boyer shall not be promptly paid up as aforesaid, she shall have the power to stop the mining and also the taking away of the ore by giving three days notice to Henry Fulmer himself, or to his foreman on the premises.

" In case any monthly payment shall be withheld for a longer period than three months after notice given, as aforesaid, then this assignment shall be void at the option of Catharine Boyer, aforesaid.

" The mining shall be done in miner's order, that is, the mines shall be worked by taking out all the ore, clean as it runs and not only take out the best and most easily to be got at, and either let the difficult to get, stand in the mine or if taken out to cast the ore of inferior quality to the rubbish or heap of rocks."

The defendant offered to prove that he operated the leased premises for a period of about three years; that he employed a large number of workmen, erected extensive machinery at great

expense; that he mined whatever iron ore it was possible to mine upon the leased premises; that the result of his so operating the mine was a loss to him of more than $10,000, although the business of mining the ore as stated was conducted in an economical and businesslike manner; also by persons of experience in the mining of iron ore, that they examined the said premises, and that the ore mines upon the said premises are exhausted and no iron ore was to be found thereon; also by expert miners and furnace men engaged in the manufacture of iron; metallurgists, chemists or mining engineers, that they examined the premises embraced in the lease, and that said premises did not contain iron ore in sufficient quantities to enable the defendant or any other party or persons to mine or take away the minimum quantity of iron ore stipulated in the lease offered in evidence, in any period for which premises were leased; that the said mines did not contain the said minimum quantity of workable iron ore fit for use in a furnace, during the period mentioned in the said lease.

Objected to as incompetent, irrelevant and immaterial to the issue now being tried.

By the Court: The objection is sustained. Defendant excepts. Bill sealed. [2]

The court on motion of plaintiffs' counsel struck out all of defendant's testimony relating to the quantity and quality of the ore on the demised premises. [1]

The other facts sufficiently appear by the opinion of the Supreme Court.

The court gave binding instructions to the jury to return a verdict in favor of the plaintiffs for the full amount of their claim. [2]

Verdict and judgment for plaintiffs for $1,271.67. Defendant appealed.

*Errors assigned* were, (1) binding instructions for plaintiff; (2) rejection of above offer; (3) striking out testimony relating to quality and quantity of ore.

*H. J. Steele* and *Edw. Harvey*, for appellant.—This case is governed by Kemble Iron Co. v. Scott, 15 W. N. 220, and not by Timlin v. Brown, 158 Pa. 606. See also Muhlenberg v. Henning, 116 Pa. 138; McCahan v. Wharton, 121 Pa. 424.

When rent is payable in the shape of royalty on minerals in the soil, no royalty is payable when no minerals are found. A covenant to work a mine cannot be enforced if it turns out that the mine is exhausted : 1 Wharton on Con. 298, 300 ; Ridgeway v. Sneyd, 1 Kay, 627 ; Clifford v. Watts, L. R. 5 C. P. 577 ; Walker v. Tucker, 70 Ill. 527 ; 1 Benj. on Sales, 94, 95.

If the ore was entirely useless, and the parties were mutually mistaken, the courts would grant relief : Mays v. Dwight, 82 Pa. 464. The obligation of the contract should be reciprocal, and unless it was binding upon the plaintiff defendant should not be held to it : Heron v. Hoffner, 3 Rawle, 400.

*Wm. Fackenthall,* for appellee.—The case cannot be distinguished from Timlin v. Brown, 158 Pa. 606. See also Coal Co. v. Wright, 15 C. C. 433.

The English rule on the subject is in accord with that laid down in Timlin v. Brown, 158 Pa. 606 ; Jeffries v. Fair, L. R. 4 Ch. D. 448 ; Jowett v. Spence, 1 Exch. 647 ; Jervis v. Tompkinson, 1 H. & N. 195 ; Bute v. Thompson, 13 M. & W. 487 ; Ridgeway v. Sneyd, 1 Kay, 627.

OPINION BY MR. JUSTICE GREEN, July 15, 1896 :

The learned court below ruled this case upon the authority of Timlin v. Brown, 158 Pa. 606. If the obligation of the defendant were the same as the obligation of the lessees in that case the ruling would be correct. It must be conceded that there is a close similarity in the controlling terms of the contracts in the two cases. But a critical examination of the terms of the respective contracts has convinced us that they are radically different in the essential matter which gave rise to the decision in the Timlin v. Brown case. In that case the terms of the lease constituted a sale of the coal in place under the whole of the tract, and the price to be paid was the price of the whole of the coal, to be paid in maximum and minimum sums which were absolutely fixed in any event. Our brother DEAN, delivering the opinion said, " The grant is absolute of all the coal on the tract; the maximum and minimum prices are fixed absolutely. It is not a mere license to mine. This stipulation in the contract, ' In case the said Brown and Hunter fails to get out the amount before stated, they agree to pay a royalty on 10,000

bushels in each and every year,' fixes without regard to contingencies the liability to pay. . . . There is nothing in the contract indicating any intention to modify or relieve the defendants from their absolute obligation to pay on the contingencies of the mine proving unprofitable, or of the exhaustion of the coal before the end of the term."

Our brother DEAN refers to the cases cited for the opposing contention and points out the differences between them and the Timlin case, and proceeds thus: "In all these cases the existence of the subject of the contract was unknown or uncertain, or if it existed the quality could only be determined by actual use. In the case before us at the date of the contract the quantity was as well known as it could be at that time. . . . But the existence of workable marketable coal under this land had been demonstrated by the lessees in sinking the shaft. The only element of uncertainty—the quantity—they took the risk of by an unqualified covenant to pay a fixed sum."

In the case at bar these elements are absent. The premises leased were a tract of timber land and a piece of arable land. The land was leased for the purpose of digging for and mining ore which was supposed to be there but it had not been developed. The lessee was to have a right to dig for, mine and take away iron ore for a period of fifteen years, and was to pay sixty cents a ton for every ton of ore sold from the premises during the term, " to be paid monthly, but the amount to be paid to said first party shall in no year be less than $400 to be paid within the year respectively." In case of a temporary suspension of work or if the lessee did not mine enough ore in any one year to yield $400, he was to pay the $400 but to have the privilege of taking out ore in another year to make up the amount.

These were the terms of the lease as it was made between the original parties. There was no agreement of any kind to pay a fixed absolute minimum sum for the ore on the place. That which was to be paid for was ore actually mined, and of course if the ore gave out before the termination of the lease, under the decisions which will be presently referred to, the obligation to pay royalty ceased. The lease was subsequently assigned to Fulmer by the lessee, or those who held his right, and a written agreement was made between the plaintiffs who held the lease

and the defendant. This agreement contains, first, an assignment of the lease, to hold from April 1, 1878, for twelve years, then an agreement by Fulmer to pay to the original lessors, the Steeley sisters, the royalty of 60 cents a ton stipulated to be paid in the lease, and also to fulfill all the covenants of Boyer, the original lessee. Next Fulmer agrees to pay to Catherine Boyer an additional sum of $17\frac{1}{2}$ cents per ton on all ore mined and taken away from the premises, to be paid monthly, between the last day of each month and the fifteenth day of the following month with provisions for the weighing of the ore as taken away. Then comes a stipulation in the following words, " And the said Henry Fulmer shall mine and take away and pay for as aforesaid not less than one thousand tons of iron ore in each and every year. He shall pay to said Catherine Boyer her royalty of seventeen and one half cents per ton on one thousand tons per annum whether he mines that or not." This is the ordinary provision contained in mining leases, where a certain minimum amount is agreed to be taken out each year, and if it is not taken out the lessee agrees to pay the royalty notwithstanding. All such stipulations however proceed upon the theory that the ore or coal is in place, and can be taken out if proper efforts are made. They do not alter the fundamental character of the contract, or change its provisions as they otherwise exist. They are intended as incentives for compliance with the duty of adequate performance, and of prompt payment.

Thus in the case of Muhlenberg v. Henning, 116 Pa. 138, the lessees covenanted, " to raise, mine, carry away and sell at least 1500 tons of iron ore annually during the continuance of this lease ; or in default thereof, to pay a royalty of $525 annually." Yet in an action to recover two years' royalty of $525 we held, that where the affidavit of defense alleged that, though the mines were worked in a workmanlike and skillful manner for about nine months, on account of the nonexistence of sufficient ore and its inferior and unmerchantable character, the lessees were unable to carry on and continue the operations of digging, mining and washing ore as was contemplated by the parties to the agreement, and could not perform the covenants of the lease, it was a good defense to the action. Mr. Justice CLARK, delivering the opinion, said, " If, however, it was established by actual and exhaustive search that,

at the time of the contract, there was in fact no ore in the land, or no ore of the kind contracted for, it cannot be pretended, upon any fair or reasonable construction of the contract, that the lessees were nevertheless bound for the royalty of $525 annually; for the payment of the royalty was undoubtedly based upon the assumption of the parties that ore, ore of the quality specified, existed there. . . . We are not to construe the contract to require the lessees to perform an impossible thing. The $525 is not a penalty, it is the price of the ore. The grant was of the ore in place, and, if the subject-matter of the contract fail, the price is not payable. If there was no ore to mine, there could be no royalty to pay.; . . . We think the manifest meaning or intention of the parties, as exhibited by the terms of the contract, was fifteen hundred tons of ' clean and merchantable iron ore' were to be mined in each year, if that quality and quantity of ore were there found, and that the contract by necessary implication must be so construed."

And so in the present case it is perfectly manifest that the parties contracted entirely with reference to iron ore which was supposed to exist, and did exist, on the land demised. The lessee was bound to use all proper efforts and exertions to find ore, and if found to mine and take it away, and to take out at least enough in each year to yield $400 annually, and if he did not take out that much he was bound to pay the $400 annually in any event, but of course this obligation proceeded upon the assumption that the ore was there, and continued to be there, in sufficient quantity to enable the lessee to perform his contract in this respect. If the ore was not there at all, or became exhausted, so that it could be no longer taken out in such quantity, the lessee was not bound to pay for it. He could not do an impossible thing and therefore could not be held liable for not doing it. There is nothing in this lease or in the contract between the plaintiffs and defendant which required him to do what he could not possibly do or else to pay for not doing it. Neither the lease nor the contract is a sale of the ore in place for a definite fixed minimum sum as was the case in Timlin v. Brown. Neither of these papers required that anything should be paid for but ore which could be taken out. The money to be paid was the price of ore which was, or could be, mined. If that failed there was no liability to pay anything.

The same doctrine was applied in the case of Kemble Coal & Iron Co. v. Scott, 15 W. N. C. 220. In that case Scott granted to the company " the exclusive right to dig and take away the iron ore in a certain tract of land, the company covenanting to pay at the rate of fifty cents per ton of ore mined," and further that for any period of three years, after the first year the rent in the aggregate should not be less than $10,000 whether ore to that extent was mined or not. The plaintiffs sought to recover for a period of three years the minimum rent, $10,000, under this covenant; on the trial the defendant offered to prove that the premises did not contain the necessary quantity of ore fit for use in a furnace to yield the amount of royalty to be paid, and we held this to be a good defense notwithstanding the absolute covenant for the payment of the amount named. Mr. Justice GORDON said in the opinion, " Hence the material question was, could the ore found in the leased premises, under the present methods of making iron, be properly used for the purpose indicated? If it could be so used, and there was enough of it, the plaintiff had a right to require the full performance of the contract; if however there proved to be a failure in either of these particulars, then was the defendant released from payment either in whole or in part, as the case might happen." The same doctrine was affirmed in the case of McCahan v. Wharton, 121 Pa. 424.

In Timlin v. Brown there was an absolute engagement to pay a royalty on 10,000 bushels each year. That was the minimum purchase price of the coal whether there was any coal there or not. But in the present case Fulmer simply agreed to mine a thousand tons of ore each year and to pay 17½ cents per ton whether he mined it or not. That is, if he fails to mine the quantity of ore he agreed to take out, he pays for it just as if he had mined it. But he is only to pay for ore which he might have taken out if he would. If the ore is not there he is under no duty to pay because he never could get it. The foundation of his liability to pay is the fact that the ore is there. If the ore is not there the fundamental condition of all liability is gone. The assignments of error are all sustained.

Judgment reversed and new venire awarded.

MITCHELL, J., dissents.