Statement.

# Wytheville.

The Big Stone Gap Iron Company v. Olinger.

June 28, 1905.

1. EVIDENCE—*Burden of Proof—Mining Lease—Conditional Contract.*—If a contract to mine so much ore per month and pay an agreed royalty per ton, provided there is that much merchantable ore upon the land capable of being mined at a reasonable cost, be abandoned by the lessee, the burden of proof is on him to show that the land did not contain ore of the requisite quantity and quality.

2. INSTRUCTIONS—*Evidence to Support—Case at Bar.*—It is error to give an instruction when there is no evidence tending to support it. In the case at bar there was no evidence tending to show that the lessee rescinded the contract of lease under the privilege reserved in the contract to do so upon paying a stipulated sum. On the contrary, the evidence shows that the contract was abandoned in pursuance of another clause of the contract.

3. MINING LEASE—*Cost of Mining—Reasonable Cost—Comparison With Other Mines.*—In order to determine whether ore can be mined at a reasonable cost, it is not sufficient to show the cost at other mines in operation. To make such a comparison proper, the conditions at the several mines compared should be the same.

4. EVIDENCE—*Merchantable Commodity—How Ascertained.*—Whether or not a commodity, such as iron ore, is merchantable is not to be determined solely from the expert evidence introduced on that subject, but from all the evidence which the court has admitted on that subject.

Error to a judgment of the Circuit Court of Lee county in an action of assumpsit. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

The instruction referred to in the court's opinion as contained in bill of exception No. 6, with the addition by the court, is as follows:

"The court further tells the jury that while the burden of proof is on the defendant to prove that the land of the plaintiff leased by it did not carry the requisite amount of iron ore that was merchantable and capable of being mined at a reasonable cost yet in sustaining this burden, it is not necessary for the defendant to show that it made any extraordinary or unusual tests to ascertain the fact, and if the jury believe from the evidence that the defendant made or caused to be made, the tests ordinarily used by men skilled in such matters, to determine such a question, and did not find said ore in sufficient quantity, and further believe from a preponderance of all the evidence in the case that said land does not carry said ore in sufficient quantity, then they will find for the defendant."

"Unless they further believe from the evidence that the defendant cancelled the contract in the manner referred to in plaintiff's first instruction."

*Irvine & Slemp* and *Ayres & Fulton,* for the plaintiff in error.

*Bullitt & Kelly,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

On the 23rd of August, 1899, John C. Olinger, the defendant in error, entered into a mining lease with R. A. Ayres.  On the 20th of October, 1899, Ayers transferred said lease to the plaintiff in error.  The lessor had notice of this transfer and agreed in writing to accept the plaintiff in error as lessee under the contract in the place of Ayers.  This action was brought by the defendant in error to recover from the plaintiff in error certain royalties claimed to be due him under this mining lease, and a judgment was obtained against the plaintiff in error for $1,501.50, and thereupon a writ of error was awarded by this court.

The lease contract which was the basis of the suit, gave to the plaintiff in error the exclusive privilege of mining iron ore upon certain land of the defendant in error for a term of five years from the date of the lease.

The terms of the lease, so far as necessary to be stated, were as follows: That the lessee should pay to the lessor a royalty of ten cents per ton for every ton of 2,240 pounds taken from the land, payable on the 20th day of the month following the month during which the ore was taken out; that the lessee was to mine not less than 1,000 tons of ore per month from the date of the lease, provided there was and continued to be that much merchantable ore on the land capable of being mined at a reasonable cost; that the lessee was to pay the royalty on the minimum amount each month, whether he mined the same or not, provided that if he failed to mine such minimum during any one month he might mine the deficit during the next month or at any time during the lease without again paying therefor; and that the lessee might at any time rescind and cancel the lease by paying to the lessor the amount of one year's royalty.

It is manifest that both parties were in doubt as to whether the development of this property would disclose iron ore in sufficient quantity and quality to justify a continuation of the contemplated enterprise.

Three propositions are made very clear by the contract:

(1) That it was the duty of the lessee to proceed with his mining operations as promptly as possible, for he had to pay the minimum royalty from the date of the lease, whether he prosecuted his mining operations or not; (2) That the lessee was only bound to mine the minimum of 1,000 tons per month, provided there was and continued to be that much merchantable ore on the land capable of being mined at a reasonable cost; and (3) that although iron ore might exist upon the leased premises of such quantity and quality that it could be mined at a reasonable cost, still the lessee would have the right to cancel the lease at any time by paying for such privilege the

minimum royalty for one year from the day the contract was rescinded. These provisions are not only clear from the language of the contract, but they seem to be reasonable, for a lessee could hardly be expected to continue the expenditure of large sums in a vain pursuit for iron ore; nor would it be desirable for him to continue running operations if the ore had no market, or for any other reason could not be made profitable.

It is not pretended that the plaintiff in error failed to proceed with mining operations upon the leased premises, and therefore the case here does not arise under the first proposition, where the plaintiff in error would be required to pay the minimum royalty whether mining operations were conducted or not. Nor does the case before us arise under the third proposition, where the lessee had availed himself of the privilege of rescinding the contract, for there is no evidence to support such a view.

On the 25th of March, 1900, the general manager of the defendant company had served upon the lessor the following notice:

"Mr. J. C. Olinger,

"Dear Sir:

"I have been instructed by Mr. Pettit to inform you that all work on your property will be abandoned by the 1st of April, 1900.

"Yours truly,

"R. F. BODY, Supt."

The evidence shows that from the date of the contract of lease to the date of this notice, about seven months, the plaintiff in error was engaged in prospecting upon the leased premises, opening mines and mining ore, and that three or four thousand dollars was expended upon such work. In pursuance of the above mentioned notice the enterprise was abandoned upon the ground, as claimed, that merchantable ore could not be found

on the land capable of being mined at a reasonable cost. On the other hand, the defendant in error contended that the ore was there, and that sufficient development to disclose that fact had not been made.

All of the evidence in the case was directed to this inquiry. So that the sole question of fact to be submitted to the jury was: Did the plaintiff in error make a *bona fide* effort to discover and mine the ore, or did it act in bad faith and abandon the enterprise without having made proper and sufficient effort to discover and mine the ore?

The first question to be considered is raised by the third instruction given for the defendant in error, which places upon the plaintiff in error the burden of showing that there was not on the land merchantable iron ore capable of being mined at a reasonable cost. There was no error in this instruction.

The lessor could not show that the land did contain ore of the requisite quantity and quality without the expenditure of a large sum of money. The record of this case shows that it is a costly matter to determine whether land contains iron ore of the quantity and quality here contemplated. It is very clear that one of the chief inducements influencing the lessor to make the contract under consideration was to have the ore developed, if it existed. This duty the lessee contracted to perform. It, therefore, is the proper party to find and ascertain the quantity and quality of the ore. Under such circumstances the plaintiff in error must assume the burden of showing that there was not on the land merchantable iron ore capable of being mined at a reasonable cost. *Jouett* v. *Spencer*, 1 Exch. 647; *Muhlenberg* v. *Henning, &c.,* (Pa.), 9 Atl. Rep. 144.

This view also disposes of instruction No. 4 asked for by the defendant company, and shows that it was properly rejected.

Objection is made to the action of the court in giving for the plaintiff below the following instructions:

## No. 1.

"The court instructs the jury that if they believe from the

evidence that the defendant intended to and did rescind and cancel the contract sued on under and pursuant to clause "e" of said contract, they will find for the plaintiff the sum of twelve hundred dollars, with interest from April 1, 1900; and they will also find for the plaintiff, if they believe from the evidence that the defendant intended to and did cancel the said contract as aforesaid, the additional sum of one hundred dollars, with interest from April 20, 1900, unless they further believe from the evidence that there was not in the month of March, 1900, on the land in controversy as much as one thousand tons of merchantable iron ore, capable of being mined at a reasonable cost."

### No. 2.

"On the other hand, if they believe from the evidence that the defendant did not cancel the contract sued on under and pursuant to clause "e" thereof, then they will find for the plaintiff the sum of one hundred dollars per month from and including March, 1900, to and including May, 1901, with interest on each one hundred dollars from the 20th of the month following the month it became due, or in other words they will find for the plaintiff thirteen hundred dollars principal and $201.50 interest, unless they believe from the evidence that there was not on the land in controversy as much as 13,000 tons of merchantable iron ore capable of being mined at a reasonable cost."

It was error to give these instructions. They are misleading and confusing. They invite the jury to consider and determine whether or not the defendant company rescinded and cancelled the lease under and pursuant to clause "e" of the contract, when there is no evidence in the record tending to show that the defendant rescinded the contract in pursuance of its privilege to do so under clause "e." On the contrary, the whole evidence shows that the contract was abandoned because, as claimed, the ore was not there in sufficient quantity and quality to be mined at a reasonable cost. As already stated,

the sole question of fact to be submitted to the jury was, did the plaintiff in error make a *bona fide* effort to discover and mine the ore. If such reasonable and proper effort was made, then the jury should find for the defendant. On the other hand, if the jury believed from the evidence that the defendant company acted in bad faith, and abandoned the enterprise without having made proper and sufficient effort to find and mine the ore, they should find for the plaintiff the minimum royalties due him under the contract.

For the same reason it was also error to add to the instruction asked for by the defendant company, which is set forth in bill of exceptions No. 6, the words, "unless they further believe from the evidence that the defendant cancelled the contract in the manner referred to in plaintiff's first instruction." The instruction, as asked for, was proper, and should have been given without addition thereto.

Instruction No. 5, asked for by the defendant company, tells the jury that if they find from the evidence that the cost of mining ore on the Olinger land exceeds the cost at other mines in operation, they may find from this fact that such cost was not a reasonable cost.

This instruction was properly refused. It leaves out of consideration the difference that might exist in the known conditions at the other mines, as to which the comparison was to be instituted. For such a comparison to be proper in determining what was a reasonable cost, the conditions at the several mines compared should be the same.

Instruction No. 6, asked for by the defendant company, tells the jury that the question of whether or not a commodity is merchantable is to be determined by expert witnesses, and that if they believe the defendant has shown by a preponderance of the evidence of such expert witnesses that the ore in question was not merchantable they must find for the defendant.

There was no error in rejecting this instruction. It limited the jury to the consideration of the testimony of expert wit-

nesses on the subject of inquiry, whereas the jury were entitled to consider all the evidence which the court had admitted bearing on that subject. This subject was sufficiently covered by instruction No. 4 for the plaintiff, which was properly given.

For these reasons the judgment must be reversed, the verdict set aside, and the case remanded for a new trial, to be had in accordance with the views expressed in this opinion.

*Reversed.*