## Shearer v. Rochester & Pittsburgh Coal Company

*Howard A. Hain* and *Dom W. Greco*, for plaintiff. *Henry Ingram* and *Thomas S. Barbar*, for defendant.

HANDLER, *P.J.*, January 5, 1981—This is a complaint to quiet title based on the averments that plaintiffs are the owners of land in Young Township, this county, consisting of 187 acres, more or less, which vested in them by deed of A. B. and Nannie Gray, dated August 25, 1955 and recorded in Indiana County, Deed Book Volume 445, page 282. That by deed of Samuel Henry et al. dated April 9, 1903 and recorded in Indiana County, Deed Book (B), Volume 81, page 6, all of the vein or seam of coal known as the "Pittsburgh coal" underlying 90.08 acres of plaintiffs' land (hereinafter the Henry coal) was conveyed to defendant's predecessor in title. The deed also grants the following mining rights:

"Together with the right of ingress, egress and regress into, upon, through, over, along and across

the tract of land hereinbefore described and mentioned, for the purpose of examining and searching for, and of mining, manufacturing and preparing said coal for market (without liability for want of leaving or providing surface or lateral support,) and taking, removing and transporting the same and other coal now owned or which may hereafter be purchased or acquired on other premises by said party of the second part, its successors and assigns, and for these purposes to build roads and drains upon and under the surface of the said land, and to locate and erect thereon such structures as may be necessary and proper for the convenient use or working of the mines or works in connection therewith, with the right to deposit the dirt or waste of the said mines or works upon any of the surface convenient thereto, and together with the right to remove all and every portion of said coal . . . release, remise and forever discharge the said party of the second part, its successors and assigns, of and from any and all actions for damages resulting to the surface of the land, the waters therein, thereon or thereunder, and the buildings and improvements now or which may hereafter be erected thereon, for want of leaving or providing sufficient surface or lateral support, and by reason or on account of exercising the rights hereinbefore granted."

Plaintiffs' deed excepts and reserves all coal known as the "Pittsburgh seam consisting of about 90.08 acres less 2 acres, more or less, and such mining rights as are set forth in a certain deed from Robert Henry's heirs (the Henry coal) to Pittsburgh Gas Coal Company" (defendant's predecessor in title).

The complaint further avers that there has been no mining of the Henry coal since the 1920's, that

all "mineable or merchantable Pittsburgh coal." has been removed from the Henry coal estate, and accordingly, defendants have exhausted their estate in the coal, the mining rights, easements, and right to eliminate the surface and lateral support of plaintiffs' property so that "title to the estate in the coal conveyed to the defendant's predecessor in title has reverted by operation of law to the plaintiffs as the surface owners." That defendants or their predecessors in title have withdrawn all mining equipment, permitting the sub-surface tunnels to collapse, thereby abandoning their estate in the Henry coal. That plaintiffs and their predecessors in title have been in open, notorious, exclusive, continuous, adverse and hostile possession of the easements over the surface and the right to withdraw the surface and lateral support for approximately 50 years. Nevertheless, plaintiffs are not in possession of the coal estate. That although plaintiffs now have title to what remains of the Henry coal strata, together with all the mining rights heretofore granted, the record of title still remains in defendant and constitutes a cloud on plaintiffs' title. Plaintiffs request relief in the form of a judgment of this court declaring that they are the legal owners of the "area once occupied by the Pittsburgh coal under their property, and of the easements, the rights of surface and lateral support and the mining rights incident thereto and that defendant be forever barred from asserting any rights, claim, or title inconsistent therewith."

Defendant has filed preliminary objections in the form of: (1) a motion to strike the complaint for the reason that it is internally inconsistent, (2) a demurrer to the action to quiet title contending that the proper action is in ejectment, (3) a demurrer to their contention that plaintiffs are the successors in interest to any reversion or possibility of reverter

owned by the original grantors of the Henry coal, (4) a demurrer to the contention that defendants have abandoned their estate in the Henry coal, (5) a demurrer to the contention that plaintiffs are the owners of the coal and all the appurtenant mining rights by reason of adverse possession, and (6) that plaintiffs have failed to join indispensable parties. The complaint and preliminary objections involve principles applicable to estates in underlying coal, the right to subjacent and lateral support of the surface owner and appurtenant rights for the purpose of mining the coal, with a novel result in mind—the acquisition by the surface owners of the entire underlying coal estate and all the mining rights conveyed to defendant's predecessor in title by a good and sufficient deed over 77 years ago. Accordingly, a discussion of the law is in order.

## Form of the Action

Admitting that every well-pleaded fact in the complaint is true, plaintiffs claim title to an estate in coal granted to defendant's predecessor in title in perpetuity together with (a) all appurtenant easements and mining rights specifically granted in the deed, including the rights of ingress and egress over the surface of plaintiffs' land and under plaintiffs' land for the purpose of mining the coal, (b) an easement for the purpose of transporting coal mined on other coal properties of defendant, and (c) a perpetual waiver of the right to surface and lateral support and the water in and under the land together with the improvements on the land. The thrust of this action is to obtain a judgment that plaintiffs own the space underneath their land previously taken up by the coal (or whatever coal is left), the right to surface and lateral support and a

bundle of rights appurtenant to the enjoyment of the coal estate together with certain easements appurtenant to other coal holdings of defendant. Notwithstanding, that the estate in the coal and the "third estate," consisting of the waiver of subjacent and lateral support and a distinct estate in the land, Stewart v. Chernicky, 43 Pa. 436, 266 A. 2d 259 (1970), are corporeal hereditaments, plaintiffs contend that an action to quiet title is the only available remedy because (a) they are not in possession of the coal or the space previously taken up by the coal, and, (b) that ejectment is not a proper remedy to determine the ownership of the easements and mining rights because they are incorporeal hereditaments: Versailles Township Authority v. McKeesport, 171 Pa. Superior Ct. 377, 90 A. 2d 581 (1952). As to defendant's title to the right to eliminate surface and lateral support, a distinct estate in the land, which will be considered later, plaintiffs simply say that their lack of possession of the coal precludes an action for ejectment to recover this right.

The key to plaintiffs' claim to all of the appurtenant mining rights (other than those rights appurtenant to other coal holdings of defendant and the waiver of surface and lateral support) is their claim to the estate in the coal or the "space formerly occupied by the coal." If plaintiffs now own the coal estate, they own the appurtenant mining rights affecting the surface and subsurface of that part of their land described in the deeds conveying the Henry coal because a merger of the dominant and servient tenements extinguished the appurtenant rights: Zerbey v. Allan, 215 Pa. 383, 64 Atl. 587 (1906); McClure v. Monongahela Southern Land Company, 263 Pa. 368, 107 Atl. 386 (1919).

The proper remedy for establishing title and the

right to possession of the coal estate in this case is ejectment. An action to quiet title may be brought where ejectment will not lie to determine any right, lien, title or interest in the land: Pa.R.C.P. 1061(2). Ejectment is a possessory action available only after plaintiff is out of possession and has a present right to immediate possession: Brennan v. Shore Brothers, Inc., 380 Pa. 283, 110 A. 2d 401 (1955). Plaintiffs' claim, based as it is on the Henry coal by reason of defendant's exhausting its estate in the coal and then abandoning it, has inherent in it the right to constructive possession of the coal estate equivalent to the same right derived from record title: Huss v. Jacobs, 210 Pa. 145, 59 Atl. 991 (1904). Constructive possession requires that plaintiffs employ an action in ejectment to establish their right of possession to the exclusion of the defendant's. This rule has been applied to oil and gas in the subsurface strata, the rights to which are claimed under a lease: Barnsdall v. Bradford Gas Co., 225 Pa. 338, 74 Atl. 207 (1909).

Plaintiffs may conceivably argue that even if they cannot establish their right to the coal estate, they nevertheless have the right to a judicial determination that the appurtenant surface rights as well as the subsurface rights appurtenant to the other coal holdings of defendant have been extinguished by adverse possession and that these rights cannot be determined in an action of ejectment. It is a fair assumption that what plaintiffs want in this case is a judgment that they are the owners of the coal estate or at least the space occupied by the coal estate. However, this should not create a dilemma resulting in a multiplicity of suits. If plaintiffs desire this relief, there is no reason why they cannot plead for relief in two alternative counts, one in ejectment and one in an action to quiet title.

## The Right to Surface and Lateral Support

Defendant is the owner of the waiver of surface and lateral support specifically conveyed in the Henry deed to its predecessor in title. Short of acquisition of this estate by deed or descent, it is impossible for plaintiffs as owners of the surface to obtain title to these rights because the rights to surface and lateral support is a recognized estate in the land that may be conveyed away by waiver or express covenant, in which instance, the owner of the surface has no right to such support: Com. v. Fitzmartin, 376 Pa. 390, 102 A. 2d 893 (1954); Gordon v. Delaware, Lackawanna and Western Railroad Company, 253 Pa. 110, 97 2d 1032 (1916). These rights cannot be lost by abandonment or adverse possession through non-user because they are rights in relief of a duty. The ownership of land has as an incident, the right to have the surface of the land supported by the sub-strata even if the sub-strata vests in title in an owner other than the surface owner. However, the so-called estate of support may be conveyed away by the surface owner and such a conveyance deprives the surface owner of the right of support. Non-user of the right is not even relevant; indeed, it is a contradiction in terms because the owner of the support estate need do nothing to exercise his right, a right which insulates him against claims arising from depriving the surface of its support. It is a protective right insuring against claims for damage to the surface by removal of subjacent or lateral support.

## Abandonment and Adverse Possession

Before discussing the two principal cases which plaintiffs cite in support of their claim for relief, it is desirable to note that such cases as Greek v. Wylie,

266 Pa. 18, 109 Atl. 529 (1920); and Wilmore Coal Co. v. Brown, 147 Fed. 931 (W.D. Pa. 1906), are inapposite. These cases involve leaseholds of coal for a term of years. A leasehold always has as an incident a reversion because it is an estate less than in perpetuity. There is always a residue of the estate left to the grantor to commence in possession after the determination of the leasehold: Smith v. Glen Alden Coal Company, 347 Pa. 290, 32 A. 2d 227 (1943).

The cases on which plaintiffs' claim is based are Chartiers Block Coal v. Mellon, 152 Pa. 286, 25 Atl. 597 (1893); and United States Steel v. DER, 17 Pa. Commonwealth Ct. 594, 333 A. 2d 486 (1975). In Chartiers, the controversy was based on ownership of the coal strata by Chartiers and the gas and oil by Mellon who desired to drill through the coal strata for the purpose of realizing the gas and oil in the strata underlying the coal, no right having been reserved to do so. Observing that the utilization of the economic value of the sub-strata requires that the owners of each must have the right to access to their respective estates, the court stated at p. 296:

"The grantee of the coal owns the coal but nothing else save the right of access to it and the right to take it away. [To which it must be added, of course, all appurtenant rights granted with the coal.] Practically considered, the grant of the coal is the grant of a right to remove it. This right is sometimes limited in point of time; in others, it is without limit. In either event it is the grant of an estate determinable upon the removal of the coal . . . When the coal *is all removed* the estate ends for the plain reason that the subject of it has been carried away. The space it occupied reverts to the grantor by operation of law . . . The most that can be claimed is that, pending the removal, [the surface owner's] right of access to the lower strata is suspended."

The actual conclusion reached by the court in the case was that the owner of the coal had a right to damages, "for every necessary interference with it" by the surface owner or someone claiming under him.

In the case of United States Steel v. DER, supra, the controversy was whether the corporation was required under the law to prepare a plan and timetable to abate a subsurface mine fire. Holding that the hearing record did not support an order by DER that plaintiff corporation prepare the plan for the reason that there was no evidence that the fire started in or remained in its coal, citing Chartiers, the court observed that if there was merchantable subsurface coal, it was the coal of plaintiff corporation. Neither of these cases is authority for the proposition that when the grantee to coal in perpetuity discontinues mining it, title is lost. Chartiers defines the right of the owner of the coal estate in perpetuity. United States Steel stands for the proposition that to impose liability on the owner of the coal for a subsurface fire, there must be proof that the fire is present in coal owned by it.

How then do these cases affect the contention of plaintiffs? It is the opinion of this court that the owner of the coal estate in perpetuity owns that estate until all of the coal is exhausted; only then do his rights cease and determine. The term "exhausted" as applied to the coal estate has been perverted by the cases involving leaseholds for a term of years to mean merchantable and mineable coal. This definition must be tested on the basis of *the present*. Furthermore, there is no contemporary authority for the use of the term in connection with the exhaustion of the coal estate, Westerman v. Pa. Salt Mfg. Co., 260 Pa. 140, 103 Atl. 539 (1918), speaks offhandedly to *mineable* coal but was really a case which decided the right to use open workings

for transporting coal mined elsewhere. The cases of Muhlenberg v. Henning, 116 Pa. 138, 9 Atl. 144 (1887); McCahan v. Wharton, 121 Pa. 424, 15 Atl. 615 (1888); and Boyer v. Fulmer, 176 Pa. 282, 35 Atl. 235 (1896), all deal with the right to royalties under a lease granting the lessee the right to remove merchantable iron ore.

Nor can the owner of the coal estate in perpetuity lose title by abandonment in the absence of adverse possession because abandonment is not predicable of perfect title: Hummel v. McFadden, 395 Pa. 543, 150 A. 2d 856 (1959). A perfect title cannot be lost by abandonment unless in consequence thereof adverse possession is taken and held for the period of the statute of limitations, Indiana County Petition, 360 Pa. 244, 62 A. 2d 3 (1948); Kreamer v. Voneida, 213 Pa. 74, 62 Atl. 518 (1905). The case of Llewellyn v. Philadelphia & Reading C. & J. Co., 308 Pa. 497, 162 Atl. 429 (1932), is not authoritative on the principle of abandonment because it involved a culm dump which was not real property but personal property.

Plaintiffs do not claim the right to the coal estate by reason of adverse possession. This in itself defeats their claim to the coal estate on any theory of abandonment because to perfect their claim to the coal estate, it is a requirement that they prove adverse possesssion. Where the surface and coal is severed, the respective owners have distinct possession. Exclusive possession of the surface by the surface owner does not establish adverse possession of the coal. The owner of the coal does not lose his rights of ownership or his possession by any duration of non-user. He must be dispossessed by an act that takes the coal estate out of his possession: Armstrong v. Caldwell, 53 Pa. 284 (1867). And if the coal estate has been worked, adverse

possession must be taken of the workings: Caldwell v. Copeland, 37 Pa. 427 (1861). As was said in Muzzio v. Steele, 279 Pa. 226, 123 Atl. 776 (1924). "'To preserve such a title the law does not require physical possession by the owner, that he should live in a coal mine.'"

Even when there are outward appearances of discontinued mining operations such as a collapse of the overlying strata into the mine entries and openings and a discontinuance of actual mining for a period of time in excess of 35 years, adverse possession is not established by anything short of actual possession of the mine workings; the owner of the coal estate in perpetuity is neither required to mine it to complete exhaustion in order to retain title, nor is he required to assert possession or exhibit other physical means indicating his purpose to mine out the remainder of the coal, Muzzio v. Steele, supra.

Plaintiffs also plead the right to the lateral and surface support as well as the appurtenant easements over the surface and through the subsurface by adverse possession. This opinion has already dealt with the lateral and surface support. Insofar as the appurtenant surface rights having been extinguished by the adverse possession of plaintiffs and their predecessor in title, it is the law of this Commonwealth that such rights cannot be lost by non-user solely. These rights came into being by virtue of the deed from Samuel Henry et al. to defendant's predecessor in title, and while non-user may indicate an intent to abandon by defendant, the owner of the dominant tenement, adverse possession by the owner of the servient tenement is required. For these purposes, our law equates ownership of an easement or similar rights of use with ownership of a fee: Hatcher v. Chesner, 422 Pa.

138, 221 A. 2d 305 (1966). As observed in Hatcher, if the owner of the easement or similar rights by his own affirmative acts renders use of these rights impossible, or if he obstructs the use of these rights in a manner that is inconsistent with further enjoyment, they will be deemed to have been abandoned even in the absence of adverse possession by the owner of the servient tenement. However, where adverse possession by the servient tenement owner is required, it must be characterized by acts which are actually adverse and hostile to the exercise of the rights by the dominant tenement owner: Graham v. Water Power Corporation, 315 Pa. 572, 173 Atl. 311 (1934); Mellace v. Armstrong, 469 Pa. 326, 365 A. 2d 850 (1976). These acts must be specifically pleaded, Pa.R.C.P. 1019(a); averring the rule of law constitutes a conclusion of law and does not suffice, DelConte v. Stefonick, 268 Pa. Superior Ct. 572, 408 A. 2d 1151 (1979).

## Indispensable Parties

Plaintiffs' claim to the coal or the space previously occupied by it can only be based on a theory that the entire coal estate of defendant has been exhausted and as a result thereof, the space occupied by the coal reverted to the grantor or plaintiff as successors in title. The chain of title attached to the complaint indicates at least six intervening conveyances. If the coal estate has been exhausted, it occurred (according to the pleadings) before title to the surface overlying the Henry coal vested in plaintiffs. It is true that notwithstanding the coal exception in plaintiffs' deed, the reversion or possibility of reverter arising at the time the coal was severed can be conveyed if the deeds indicate the intention to do so: London v. Kingsley, 368 Pa. 109, 81 A. 2d 870 (1951). This applies to every deed in

the chain of title as well as any will and the effect of an intestacy. Plaintiffs in order to suceed must plead facts which support a reversion and that they are now the owners of it. This requires pleading every conveyance in the chain of title. The respective grantors are not indispensable parties because in an ejectment action, a plaintiff must recover if at all on the strength of his own title and not because of the weakness or want of title in defendant: Blummer v. Metropolitan Life, 362 Pa. 7, 66 A. 2d 245 (1949); Harbor Marine Company v. Nolan, 244 Pa. Superior Ct. 102, 366 A. 2d 936 (1976). If the respective conveyances indicate a conveyance of the reversion which finally vested in plaintiffs, the only indispensable parties are plaintiffs and defendant. If, however, intevening conveyances are questionable on the matter, and plaintiffs desire to prevail, the party or parties to the questionable conveyances become and are indispensable parties.

## ORDER

And now, January 5, 1981, it is ordered and directed as follows:

1. That the preliminary objection in the nature of a motion to strike the pleading is dismissed.

2. That the preliminary objection in the form of a demurrer to the form of the action is sustained with the right in plaintiffs to plead over by filing an amended complaint in ejectment in conformity with this opinion.

3. That the preliminary objection in the form of a demurrer (unnumbered) relating to plaintiffs' ownership of the reversion is sustained with the right in plaintiffs to plead over by amending their complaint in conformity with this opinion.

4. That preliminary objections nos. 4 and 5 in the

form of a demurrer is sustained, with the right in plaintiffs to plead over by filing an amended complaint in conformity with this opinion.

5. That preliminary objection no. 6 is denied for the reasons stated in the foregoing opinion.

6. That preliminary objection no. 7 is denied for the reasons stated in the opinion.

7. That all amendments shall be accomplished on or before January 30, 1981.